[No. 652.  Decided January 6, 1893.]

TOWN OF SUMNER, *Appellant*, v. J. E. PEEBLES, MAHELE E. PEEBLES, W. R. LINDSAY AND JOSEPHINE M. LINDSAY, *Respondents*.

HIGHWAYS — ESTABLISHMENT OF COUNTY ROAD — CHANGE OF
LOCATION — ESTOPPEL.

Under the road law of 1859 (Laws 1859, p. 7), when the board of county commissioners caused to be entered in the "road book" required to be kept by them as a public record, a petition for a county road, the report of viewers thereon, a description of the road and the adoption of the view made, the road was thereby established of the width of sixty feet, in the absence of any order of the board prescribing a less width.

A county road was established in 1860, and in 1863 the county commissioners, on a petition therefor, irregularly ordered that the location of a portion of the road be changed, granting the order for the change on the same day the petition was filed, and instructing the supervisor to open the road "as now laid out."  But no change was made at the time and the public continued to use the original road for a number of years.  In 1874, K, one of the petitioners for the change, and who had succeeded to the ownership of the land through which the old and the proposed roads lay, being at the time road supervisor of the district, obstructed and closed the old road and opened a new one thirty feet in width along the line of the

changed location, at the public expense. *Held,* That as supervisor he took possession of the new line of road as a public road of the statutory width, and that as owner he assented to the proceedings had by the board of commissioners eleven years before, and is estopped from claiming that the new road is not a legal road of sixty feet in width.

*Appeal from Superior Court, Pierce County.*

*Arthur Remington* (*Parsons & Corell,* of counsel), for appellant.

*Judson & Sharpstein,* for respondents.

The opinion of the court was delivered by

STILES, J.—The first question for determination in this case is: Did the proceedings before the county commissioners of Pierce county, in 1860, and the subsequent facts in regard thereto, constitute a certain road a county road within the meaning of the general road law of 1859? (Laws of 1859, p. 7.)

The records of the county of Pierce show the following entries concerning the establishment of the road in question:

"1. At the regular May, 1860, term of the board of county commissioners of Pierce county, Washington Territory, the petition of John B. Leach, and twenty-three others of said district, was presented by William M. Kincaid, the owner of the land on both sides of the road in question, setting forth the public necessity for a road on the north side of the Puyallup river, described in said petition.

"2. Said petition was by order of the commissioners thereupon recorded in the proper record.

"3. At the same term of the board, May 10, 1860, the board appointed viewers of said road, and said order was duly entered.

"4. At a regular term of said board, August 6, 1860, the viewers made their report, containing a detailed statement of their doings, in which they say that they carefully marked their view from point to point. The report esti-

mated the cost of the view, and was signed by two of the viewers.

"5. The view was thereupon adopted, and duly recorded.

"6. At the regular term of said board, in May, 1863, a petition was presented, signed by eighteen residents of the district named, among whom was John F. Kincaid, afterwards the owner of the land on both sides of the road in question, which petition is as follows: 'We, the undersigned, citizens of Puyallup valley, Pierce county, Washington Territory, would ask your honorable body to change the road in said valley, beginning at a bridge on the Stuck creek, following the cedar grove on the south side, and running due east about seventy or eighty rods; from thence in a southeasterly direction on the west side of said cedar grove until it intersects the old road.'

"7. Said last named petition was thereupon recorded, and the board at the said term ordered that said petition be granted and that the supervisor, F. C. Meade, be instructed to open the same 'as now laid out.' Said order was thereupon recorded.

"8. The first location was traveled, used and known by the public as a county road, and was worked and kept in repair by the county from 1860 to 1874.

"9. The change petitioned for in the last mentioned petition changed said road from one hundred to two hundred feet from its former location to the south, shortened said road and placed it upon higher and better ground.

"10. From 1874 on, as will be hereafter noted, the old road was abandoned, and the line was changed to the location petitioned for in 1863. And from thence to the time of commencing this action, the new location has constituted the county road."

Objection is made to the consideration of the original road as a county road, for the reason that so far as appears no order was made by the board declaring the road petitioned for to be established and directing it to be opened.

Sec. 4 of the act in question provides as follows:

"The board of county commissioners shall cause their clerk to enter in a well bound book their action upon all

roads which they shall establish, alter or vacate, which book shall be called the 'road book' of the county; in which book all the records concerning the roads at present established in the county shall be entered, and no county road hereafter altered or established shall be opened until the same shall be fully recorded in said book. Said road book shall be a public record, and be kept in the office of the clerk of the board of county commissioners, and shall be open to the inspection of the public.''

As we construe it, the action of the board in directing the petition of Leach and others, for the opening of the road in 1860, to be recorded in the road book, was substantially the granting of that petition. The appointment of viewers was the next step taken toward the opening of the road, and the adoption of the report of the viewers was the final step, and all that was necessary to constitute the establishment and legal opening of the road. The report of the viewers contained a detailed description of the line of the road, and showed that it was marked along its center line from point to point. There is nothing in the statute which definitely declares what shall constitute the establishment or opening of a county road, and it is·not prescribed that there shall be any order declaring the same, but from ·the negative declaration that ''no county road hereafter altered or established shall be opened until the same shall be fully recorded in said book,'' we understand that when in the road book there is entered a petition, the report of viewers, a description of the road and the adoption of the view, the road is thereby and thenceforth established. *State v. Dover*, 10 N. H. 394. It was said in *Harrow v. State*, 1 G. Greene, 439, a case arising upon a criminal indictment for obstructing the road, that the road was established when the survey and plat were placed upon record as required by the statute. The statute in that state simply required survey and plat to be recorded. That disposes of the first question, and we think it must be con-

ceded that if the road was thus legally established it was of the width of sixty feet, thirty feet on each side of the line marked by the viewers, since § 7 of the act in question prescribed that county roads should be sixty feet in width unless the commissioners, upon the prayer of the petitioners, determine upon a less width.

The second point in the case grows out of the change ordered in 1863. The road as originally laid out lay entirely within the land of William M. Kincaid. In 1863, John F. Kincaid, who later became the owner of all the land through which the road ran, was one of the petitioners for the change of the line of the road, but whether or not William M. Kincaid was also a petitioner does not appear. This change was ordered with very little formality, under the act of January 29, 1863, which was substantially, if not precisely, the same as the act of 1859. The petition was filed, and on the same day it was ordered granted, and the supervisor was instructed to open the road "as now laid out."

Section 11 of the act provided for cases where persons through whose land a public highway was already established were desirous of turning said road over any other part of their land. Such an individual was himself authorized by petition to apply to the commissioners to permit him to turn the road through any part of his land on good ground and without materially increasing the distance to the injury of the public. The further provision in the section required the appointment of viewers, and authorized the commissioners, upon their favorable report, to order a road to be re-located as prayed for. It was also incumbent by the statute that the landowner open the proposed new road of the legal width, and in all respects make it equal to the old road for the convenience of travelers, and thereupon the new road should be declared to be a public highway, and a record made thereof, and so much

of the old road as was made unnecessary by the new road should be vacated. In substance this section was continued in force, and is found in Code 1881, § 2981.

Now, in this instance, many of the formalities were entirely dispensed with, the prayer of the petitioners was at once granted, and the supervisor was ordered to open the new road. We interpret the clause "as now laid out" to mean as laid out by the order making the change. But the actual opening of the new road did not take place until 1874, when John F. Kincaid, who was then the owner of the land through which both roads lay, was also the road supervisor of the district. He obstructed and closed the old road and opened a new road along the line of the changed location. This he did as supervisor, at the public expense. It seems to us that there can be no question but that the road supervisor was acting, not upon his own responsibility, either as an individual or as owner of the land, but as road supervisor, in pursuance of his duty under the order of the board made in 1863, and until that time allowed to lie dormant and unexecuted. The effect of his action must be that as supervisor he took possession of the new line of road as a public road of the statutory width, and that as owner he assented to the proceedings had by the board of commissioners eleven years before. But he built a fence on each side of the road only fifteen feet from its center line, thus, it is claimed, asserting his claim that the road should only be thirty feet in width. But the individual Kincaid certainly could not be permitted to set up his claim against the act of the supervisor Kincaid in taking possession of the road of the statutory width for the use of the public. And the fact that he was permitted to maintain his fences for many years can be taken for nothing more than a temporary concession on the part of the public that no more than thirty feet was actually necessary for the purposes of the road at that time.

Subsequently, and in 1883, Kincaid and Ryan, to whom he had conveyed an interest in, or a portion of, the land, filed a plat of the town of Sumner, and showed thereon, along the line of this county road, a highway which they called "Division street or County road." Kincaid's dedication was on the south line of the road, and showed a road thirty-two feet in width, and Ryan's line of the north side of the road in his portion of the dedication fixed the road on the north as thirty feet in width.

Whatever may be said of the efficacy of the records of the county commissioners, it is certain that this plat showed sufficient in itself to warn purchasers of either Kincaid or Ryan that Division street was on the line of what had been or was a county road, and such purchasers were bound to take notice that the statutory width of any county road was sixty feet.

Many questions are argued and many authorities cited in the briefs of counsel, the citation of which is rendered unnecessary by the view we take of this action, viz., that the original road was laid out with a sufficient regard for the requirements of the statute to make it a legal county road, and that Kincaid's act in shutting up the legal road and opening the new road was in pursuance of the irregular order of 1863, and estopped him from saying that the new road was not also a legal road.

It follows that the judgment should be reversed, and that the town of Sumner, which is now the successor of the county in the control of this highway, be permitted to take possession of the roadway to the extent of thirty feet on each side of its center line, and it is so ordered.

ANDERS, C. J., and HOYT, DUNBAR and SCOTT, JJ., concur.

ON PETITION FOR RE-HEARING.

STILES, J.—The opinion heretofore filed contains a wrong statement of fact, which is pointed out in the peti-

tion for re-hearing.   Kincaid's part of the plat referred to was of the southern portion of the town and showed the street to be thirty-two feet wide, while Ryan's plat was of the northern portion of the town and showed a street but thirty feet wide.   Our understanding of the record was that Kincaid had, by the plat, contributed sixteen feet and Ryan fifteen feet, making a street thirty-one feet wide throughout its length.   The lots owned by the respondents lie, it is said, within fifteen feet of the center line of the street.

This error of statement seems to make no difference in the merits of the case, however.   We think the opinion shows with reasonable clearness that this court holds that the original road was lawfully established, and that the new road was not.   But there was an attempt by the proper authorities, in 1863, to make a change to the exact location which was afterwards adopted by Kincaid, in 1874, in such a manner and under such circumstances as estopped him to say that the proceedings taken for the change were not regular.   One thing is certain: If Kincaid could *change* the road at all, it must have resulted in such a change alone as the law permitted, viz., a road sixty feet in width; and if it did not result in a lawful road, then the road has never been changed, and the old road, although closed up for almost twenty years, is now subject to be again occupied by the public.

The public cannot be forced into trades in the way proposed.   It is either entitled to all that the law contemplated it should have, or it is not bound by the asserted change at all.   The decision made was based upon the assertion in the record that there had been a change through the act of Kincaid in 1874; not upon the only other theory, viz., that he had voluntarily opened a new road and unlawfully closed up the old one.

Something is urged about the hardship to purchasers,

in this connection; but, bearing in mind that the public is entitled to a sixty foot road, we doubt whether the purchasers in this case are likely to suffer greater hardship than others who may, as purchasers, be now occupying premises which are part of the old road, where they would certainly be disturbed if the respondents' theories were adopted.

Petition denied.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.