THOMAS QUINN, Appellant, v. LARS BAAGE AND JOSEPH HEIBER.

**Highways:** ESTABLISHMENT: RECORD OF PROCEEDING: PRESUMPTIONS. 1 The fact that the records of the county auditor do not show his certification to the township clerk of an order of the supervisors directing the opening of a highway, or the clerk's direction to the road supervisor, does not affect the validity of the highway; since the same are not required by statute to be made a matter of record: and even if essential to the public right it will be presumed that such officials performed their duty, especially after the lapse of many years.

**Obstruction of highways:** A public highway in its length and breadth 2 belongs to the public, and a fence constructed near the center and extending along the highway is an obstruction.

**Width of highways:** The width of a highway need not be recited in 3 the proceedings establishing it, as the same is determined by statute unless otherwise fixed by the supervisors.

**Location of highway:** DESCRIPTION. A proposed highway designated 4 as commencing at a certain section corner and running thence west on said line a certain distance is sufficiently located, the line described being intended as the center of the highway.

**Right of public to highway.** The mere fact that a highway fence was changed by only one of the adjacent owners after the location of the road between them, will not prevent the public from asserting its right to that portion of the highway occupied by the other owner, whenever the public convenience so requires.

**Donation of land for highway:** STATUTE OF FRAUDS. Where there has been a donation of land for highway purposes which amounts simply to a waiver of the right to damages, there can be no application of the statute of frauds.

**Highways:** LIMITATIONS: ABANDONMENT: ESTOPPEL. In the establishment of highways the municipality exercises governmental functions, so that the statute of limitations does not run against it with respect to encroachments thereon; but where a highway has been totally abandoned for more than ten years and there have been existing adverse private rights for a like period the doctrine of estoppel has been applied: however the mere fact that a highway fence has not been upon the true line, and the adjoining owner has enclosed and used a portion of the same, will not estop the public from asserting its right to the full width whenever required for travel.

**Highway boundaries:** ACQUIESCENCE. The doctrine of acquiescence is founded upon an agreement fixing a boundary by long recognition and maintenance of a certain defined line, and therefore it has no application to the location of a boundary between a public highway and an adjoining owner, for no one representing the public is authorized to agree for it on any particular location.

**Same:** OBSTRUCTIONS. The occupation of a portion of a highway by an individual is a mere obstruction for which no lapse of time will enable him to acquire a right therein; and no acquiescence on the part of any official will deprive the public of its right to use the whole highway.

**Same:** ESTOPPEL. Where there has been no definite location of highway boundaries the public is not estopped or bound by the act of an abutting owner, in maintaining a fence within the limits of the strip established as a highway, however long continued.

**Same.** To work an estoppel against the public the occupancy of an individual of a portion of a highway must have been inconsistent with the rights of the public, and for such length of time that indicates acquiescence by the public officials in a permanent appropriation of the ground for other purposes. The individual use and occupancy in the instant case is held insufficient to work an estoppel.

Weaver, C. J., dissenting.

*Appeal from Monona District Court.*— Hon. ˉFrank R. Gaynor, Judge.

Monday, December 16, 1907.

Rehearing Denied, Tuesday, May 12, 1908.

Action to enjoin defendants, who are road supervisors and township trustees, from removing a certain fence claimed by them to be in the highway but alleged by plaintiff to be on the boundary between it and his land. Defendants prayed that plaintiff be restrained from interfering with the removal of the fence. The petition was dismissed, and decree entered for defendants as prayed. The plaintiff appeals.— *Affirmed.*

*C. R. Metcalf,* for appellant.

*S. D. Crary,* for appellees.

Ladd, J.— The plaintiff acquired title to the N. W. ¼ of section 16 in township 85 N. of range 43 west of the fifth P. M. in November, 1900, and since then has resided thereon. The fence along the north side is near the section line, six feet south of it at the east end, and one foot at the west end, and is substantially where it or fences replaced have stood for thirty or thirty-five years. Prior to 1894 there had been some travel along the north line of section 16 ever since it had been fenced, but not in any beaten track nor within the ordinary boundary of a highway, as the section to the north was not fenced and the main thoroughfare extended diagonally across the southwest quarter of section 9ˑ to its western boundary and then on to the north. The land appears not to have been cultivated, and the travel was not such as to mark it with any degree of certainty as a highway. There was some testi-

mony to the contrary, but the court might well have found as stated. The evidence is such that we are not justified in interfering with its conclusion. The parties stipulated: "That the highway in question, to-wit, the 'change in the Mapleton & Smithland Road' commencing at the southeast corner of the southwest quarter of section 9, township 85, range 43, Monona county, Iowa, running thence west on said section line 160 rods, and thence north on the west section line of said section 9 to intersect with old Mapleton & Smithland Road, vacating and changing that part of the said Mapleton & Smithland Road running diagonally through said section 9 from northwest to southeast, was duly and legally established by the board of supervisors of Monona county, Iowa, during the month of June, 1894, and that no reference as to the width of the said highway was made in any of the proceedings to establish the said highway, and that the records in said proceedings to establish said highway show that the lands for said highway purpose was donated by the respective landowners on each side of the said highway." It was also stipulated that the records of the county auditor did not show that the plat and field notes of said highway, recorded therein, had been certified to the township clerk, or that the latter had directed the road supervisor to open or work said highway. This agreement of the parties obviates the necessity of inquiring into the validity of the proceedings, and the points argued may now be disposed of in the order presented.

I. Appellant first contends that the road supervisor, in attempting to remove the fence, was a trespasser, in that he was unauthorized by the township clerk. The Code re-

1. HIGHWAYS: establishment: record of proceedings: presumptions.

quires the order of the board of supervisors establishing a highway to be spread on the road record by the county auditor, and also that the plat and field notes be recorded by that officer. Sections 1503, 1504, Code. Thereupon the auditor "shall certify the same to the township clerk, and the

supervisors of roads shall be directed by him to have the same opened and worked," a reasonable time being given owners to fence and the right to remove growing crops. It will be noted that a record of the certification to the township clerk and the direction of the latter to the road supervisors are not exacted of the county auditor, and for this reason the stipulation that the records fail to show either of these does not prove that the highway has not been opened or worked by the road supervisor since established by the board of supervisors, and the presumption must be indulged that the auditor and township clerk performed their duties in the respects mentioned, if these were essentials precedent to the use of the road by the public, especially after the lapse of so many years.    Section 1560 of the Code expressly authorizes the road supervisors to remove all obstructions in the road, and, if the fence was such, defendants had the right to remove the same.

II.    There is no merit in the claim that the fence, if in the highway, did not constitute an obstruction.    It extended for a distance of one hundred and sixty rods near

2. OBSTRUCTION OF HIGHWAYS.

the center of the strip set apart for road purposes.    The public highway from side to side and end to end belongs to the public.    *Perry v. Castner,* 124 Iowa, 386; *Rae v. Miller,* 99 Iowa, 650; *Slocum v. Ry.,* 57 Iowa, 675.    And obstructing the same by fences is denounced by the Code as a nuisance.    Section 5078, Code.

III.    The width of the highway was not recited in the proceedings for its establishment.    This was not necessary. Section 921 of the Code of 1873, now section 1483 of the

3. WIDTH OF HIGHWAYS.

Code, provided that " roads hereafter established, unless otherwise fixed by the board shall be at least 66 feet wide."    See *Bigelow v. Ritter,* 131 Iowa, 213.

Nor is there any ground for the suggestion that its location was not definitely indicated by describing it as " commencing at the S. E. corner of the S. W. ¼ of Sec.

9," and " thence west on said line 160 rods." Manifestly

**4. LOCATION OF HIGHWAY: description.** this line was intended as the center of the highway, as according to the stipulation of facts " lands for highway purposes were donated by the respective landowners on each side of the highway." The line was as definitely described as though section 16 had been mentioned, and nothing in the record indicates a purpose that more should be taken for road purposes from section 9 than from section 16. It may be that the traveled way was not changed materially after the establishment of the road by the board of supervisors, but we have discovered nothing tending to show a purpose on the part of the board to locate the strip to be used as a highway other than as shown by the record.

The mere fact that the fencing was not changed save by the owner of the S. W. ¼ of section 9 down to the north line of the highway as established will not prevent the

**5. RIGHT OF PUBLIC TO HIGHWAY.** public from asserting its right to the portion inclosed by plaintiff whenever increased travel and the exigencies of the public so require.

IV. The statute of frauds has no application, for the donation by the owners on each side of the highway amounted to no more than a waiver of any damages either

**6. DONATION OF LAND FOR HIGHWAY: statute of frauds.** might otherwise have claimed because of taking the land for the public use. The order of the board of supervisors, not the alleged donation, established the easement for the benefit of the public.

V. Though the authorities are in conflict on the question, this court is committed to the doctrine that in establishing and maintaining a highway a municipality ex-

**7. HIGHWAYS: limitations: abandonment: estoppel.** ercises governmental functions, and for this reason the statute of limitations does not run against it with respect to encroachment therein. *City of Waterloo v. Union Milling Co.,* 72 Iowa, 437; *Taraldson v. Town of Lime Springs,* 92 Iowa, 187. See cases col-

lected in note to *Maire v. Kruse,* 85 Wis. 302 (55 N. W. 389, 26 L. R. A. 449); Warvelle, Ejectment, section 466. On this ground title to a highway cannot be acquired by adverse possession, but where an easement in the nature of a highway has been totally abandoned for more than ten years, during which time private rights have been acquired by adverse claim thereto for a like period, the doctrine of estoppel has been applied against the public in the interest of justice to the abutting owner. Thus in *Davies v. Huebner,* 45 Iowa, 574, the court said that " where the nonuser has continued for such a length of time, and private rights of such character have been acquired by long continued possession and consequent transfer of lands by purchase and sale, justice demands the public should be estopped from asserting the right to open the highway. The first requisite to establish such estoppel should be that the adverse possession should continue for ten years by analogy to the statute of limitations. Then it should be shown that there has been a total abandonment of the road for at least the period of ten years." In that case a house had been erected in the sixty feet set apart for a highway in 1846 by an adjoining owner, and defendant had cultivated up to a fence which he had maintained for over ten years on the section line in the center of this strip. There had been no traveled way until recently, and the court held the public estopped from claiming any right in the portion inclosed. In *Orr v. O'Brien,* 77 Iowa, 253, the highway had not been opened or used for over twenty years after being established, and had been adversely occupied for more than ten years, and the doctrine of estoppel was again applied as it was later in *Smith v. Gorrell,* 81 Iowa, 218, and *Sherman v. Hastings,* 81 Iowa, 372. See, also, *Crismon v. Deck,* 84 Iowa, 344.

But where the road has been established and continually used, the mere fact that the fences bordering it are not on the true line and the portion beyond has been occupied

by the landowner up to the fence and not made use of by
the public will not work an estoppel against the public, but
the entire width of the highway may be appropriated by
the public whenever required for the purposes of travel.
The continued use of the highway rebuts any suggestion of
abandonment, and the fact that the entire width has not
been appropriated to such use indicates no more than that
in the opinion of the then road officers all is not immediately
necessary to meet the demands of the traveling public.    There
has been no abandonment, declared in *Davies v. Huebner,*
essential to an estoppel in such a case — merely a delay in
occupying until required.    *Bigelow v. Ritter,* 131 Iowa, 213.
In this respect the rule is identical with that in relation
to the acceptance by a city or town of the portion of a plat
set apart for streets and alleys.    *Burroughs v. City of Chero-
kee,* 134 Iowa, 429, and decisions therein cited.

Manifestly the doctrine of acquiescence can have no
application to the fixing of a boundary between the abutting
owner and the highway, for no one representing the pub-

8. HIGHWAY      lic is authorized to enter into an agreement
BOUNDARIES:
acquiescence.    upon or to acquiesce in any particular loca-
tion.    The fee to the streets is in the town or city, but al-
ways in trust for the public.    The municipality can neither
sell nor convey nor authorize their use for private uses.    It
has no authority with reference thereto save as conferred
by the statute.    *Stanley v. City of Davenport,* 54 Iowa, 463.
The same doctrine has been held to apply to highways in
the country.    *Dickinson County v. Fouse,* 112 Iowa, 21.    It
was there noted that the easement does not vest in the peo-
ple of the county but the public generally, and that while
the board of supervisors may establish, maintain, or discon-
tinue, and township officers may keep in repair, yet nothing
goes with these powers not expressed or implied as essential
for their performance.    The doctrine of acquiescence is
founded on the presumption of an agreement fixing the
division line from long maintenance of a fence or other

monument marking a line as a boundary between the adjoining owners, and this is of such strength that, after the lapse of ten years, in the interest of peace and quiet, they are not permitted to gainsay the agreement thus inferred. In other words, having adopted a line as a boundary between them by unmistakable acts, they are not permitted to deny the agreement to be implied therefrom. *Miller v. Mills County*, 111 Iowa, 654.

As an official of the county or township is not authorized to establish the line other than in its true location, it follows that the public cannot be bound by such an agreement, if made, or by acquiescence in a line erroneously treated as correct, no matter for how long a time. The public is not bound to take possession of the entire highway or street, but may use such portion as may be necessary for the public convenience and appropriate the remainder whenever needed. The authorities are in harmony with these views. *Driggs v. Phillips*, 103 N. Y. 77 (8 N. E. 514); *Humphreys v. Woodstown*, 48 N. J. Law, 595 (7 Atl. 301); *Fox v. Hart*, 11 Ohio, 414; *Childs v. Nelson*, 69 Wis. 125 (33 N. W. 587); *Reilly v. Racine*, 51 Wis. 526 (8 N. W. 417); *Sumner v. Pecbles*, 5 Wash. 471 (32 Pac. 221, 1000); *Webb v. Butler Co.*, 52 Kan. 375 (34 Pac. 973); *Pillsbury v. Brown*, 82 Me. 450 (19 Atl. 858, 9 L. R. A. 94); *Walker v. Caywood*, 31 N. Y. 51; *Brooks v. Riding*, 46 Ind. 15; *Madison v. Mayers*, 97 Wis. 399 (73 N. W. 43, 40 L. R. A. 436, 65 Am. St. Rep. 127); *Com. v. McNaugher*, 131 Pa. 55 (18 Atl. 934); Elliott, Roads & Streets, 668. As said in the first of the above cases, " the occupation of a portion of the highway by an individual is a mere obstruction and nuisance for which no lapse of time will enable him to prescribe, and no acquiescence on the part of highway officials of the town will deprive the public of the right to use the whole highway or in any degree lessen the duty of such officials to remove the obstruction when the removal is necessary." Encroachments on a high-

9. SAME: obstructions.

way continually used cannot be legalized by mere lapses of time. The limited use will not lessen the right of the public to use the entire width of the road whenever the increased travel and exigencies of the public render this desirable. *Perry v. Castner,* 124 Iowa, 386. This question seems to be settled by the recent case of *Bigelow v. Ritter, supra,* though expressions to the contrary may be found in some other cases. In *Corey v. City of Ft. Dodge,* 118 Iowa, 742, acquiescence for many years in a particular line as the true boundary by the adjoining properties is said to be a circumstance strongly tending to show its location to be taken as conclusive in the absence of other controlling circumstances. This is sound doctrine when applied to the owners abutting on the highway as appears from *Buch v. Flanders,* 119 Iowa, 164, and *Klinkefus v. Vanmeter,* 122 Iowa, 412. That is, the mere fact that a road separates the premises of conflicting claimants can make no difference in the doctrine of acquiescence as between them.

Moreover the fact that a fence has marked the supposed line between the highway and the abutting owner for many years is evidence entitled to more or less weight, depending on the circumstances, that such line is the true boundary. But it does not follow, as said in the *Corey* case, that " the fact that one of the adjoining owners is the city or general public can make no difference with the reason or application of the rule," and a similar statement in *City of Eldora v. Edgington,* 130 Iowa, 151. In neither of these was the statement essential to a decision, and in both the long continuance of the fence was treated as merely evidence in connection with other circumstances in fixing upon the true boundary of the street. Our conclusion is inconsistent, however, with a portion of the opinion in *Axmear v. Richards,* 112 Iowa, 657, and in so far as inconsistent therewith that case is overruled, though the conclusion therein announced may be sustained on other grounds. In none of the three cases last mentioned were

10. SAME:
   estoppel.

the authorities examined or the grounds for the holding considered. These are the only decisions in this State touching the subject, and we have found none elsewhere, save when controlled by statute, as in *Winslow v. Nayson,* 113 Mass. 411, or where the statute of limitations is held to run against the State, as *Gregory v. Knight,* 50 Mich. 61 (14 N. W. 700). See *Chamberlain v. Ahrens,* 55 Mich. 111 (20 N. W. 814). On the contrary the rule prevailed in this State, prior to *Axmear v. Richards, supra,* determined in December, 1900, that slight variations in the location of fences along the highway could not be taken advantage of by the State or the abutting owner. Thus the evidence, as stated in *State v. Crow,* 30 Iowa, 258, " tended to show the use of the highway in controversy by the public and the acquiescence therein by the owners of the land for more than ten years prior to the alleged obstruction," and the court held that, as the highway had been established by the board of supervisors, defendant would not be guilty if he placed his fence on the true boundary, even though this were in the road as previously used. In *State v. Welpton,* 34 Iowa, 145, a highway had been established and boundary fences stood for twenty-five years, when it was discovered that the fence was on defendant's land. He moved it over thirty feet to the true line, and the court held that the claim of the public was to the true line, and that the doctrine of *Grube v. Wells,* 34 Iowa, 148, was applicable, saying that the use was not adverse, as " it was intended to conform to the line prescribed in the order establishing the road, and the law will not presume a grant of the strip between the true boundary and the fence," adding that the owner was charged with knowledge of the record made in establishing the highway and could not acquire part of it by possession alone. In *State v. Gould,* 40 Iowa, 372, there was a similar controversy, and the court, after deciding that where a road has been established by the board of supervisors neither the question of dedication nor of prescription can arise, held

that " the real question is, where is the second correction line? When that is determined, the location of the road is determined, as well as whether the defendant's fence is within or without its limits." And further on it is said that " the public cannot be deprived of, nor impeded in the right to the use of, a highway because of the mistake, however honestly made, of one who places an obstruction upon it." See *Bolton v. McShane,* 79 Iowa, 26; *Hempsted v. Huffman,* 84 Iowa, 398.

The public has a mere easement subject to which the land is held by the owner, and if the facilities are ample for use by the public for the time no one feels specially interested in seeing that the lines of the road have been partially encroached upon by the adjoining proprietor. Indeed, the motives of a road officer who should require the removal of a fence, slightly encroaching on the highway, if ample space were still left for travelers, would be likely to be questioned. The character of such an improvement does not indicate a purpose to appropriate the land inclosed. None of the traveled portions of the highway included, no right, then enjoyed or apparently desired, is infringed. The acts are not inconsistent with the purpose of merely temporary occupancy by permission or suffrance. *Lane v. Kennedy,* 13 Ohio St. 42. In *Fox v. Hart,* 11 Ohio, 414, the public had been deprived of a part of the original road for eighteen years, and it was held that there was " nothing to authorize the presumption that any portion of it had been abandoned or would not be occupied as soon as the public convenience should require. . . . He (abutting owner) had no reason to suppose that such portion was lost by his encroachment or the right to it in anywise impaired, nor was it so lost or impaired." And such is the tenor of the decisions generally. On reason and authority then we reach the conclusion that, where there has been no practical location of boundaries of a highway as surveyed, the public is not estopped or bound by acquiescence in the maintenance

of a fence by the abutting landowner within the limits of a strip established as a highway, however long continued.

VI.  Has the use of the premises by plaintiff and his grantors since the highway was established been such as to estop the public from claiming that portion of it south of the fence?  None of the buildings were erected within about a rod of the south line of the highway, and the planting of timber trees therein was not necessarily inconsistent with the easement of the public. *Quinton v. Burton,* 61 Iowa, 471.  Moreover, for all that appears, the buildings may have been located according to the notions of the owner at the time with reference to the highway as in fact ordered by the board of supervisors.  The fee to the highway remained in the landowner, and there is no evidence that plaintiff's grantor, in planting the fifteen or twenty timber trees which were there when plaintiff acquired title in 1900, intended to assert any claim to the ground as against the public.  The road was not much traveled, and trees therein might have been thought not to interfere with its limited use.  To work an estoppel against the public, the occupancy must have been in its nature inconsistent with the right of the public to the highway and for such a length of time as indicates acquiescence of the officers in the permanent appropriation of the ground for other purposes. *Bradley v. Appanoose County,* 106 Iowa, 105; *Burroughs v. City of Cherokee,* 134 Iowa, 429.  All the improvements by plaintiff were made within three or four years prior to the trial.  Possibly planting part of his orchard in the ground set apart for highway purposes may have amounted to an assertion of ownership inconsistent with an easement in the public.  If so, and it is unnecessary to decide the point, occupancy for that purpose has not continued long enough to work an estoppel.  The objection to that portion of the decree restraining plaintiff from interfering with the removal of the fence by the road supervisors is without merit.

The decree is *affirmed.*

11. SAME.

WEAVER, C. J. (dissenting).— The foregoing opinion is a broad departure from the rule which has been followed by this court in highway cases for more than a quarter of a century. To accomplish that result we here explicitly overrule one case that has hitherto passed unquestioned, and undermine or disregard the authority of a dozen others. The law as we have heretofore recognized and applied it has worked no wrong or hardship to the public or to the individual citizen, while the rule now announced opens the door to endless and vexatious litigation over lines and boundaries which have been observed and acquiesced in by all parties in interest for generations. I see nothing to be gained by this radical change of point, but on the contrary believe it will develop conditions which should be carefully avoided. For these reasons I cannot concur either in the result or in the reasoning upon which it is reached.