[No. 11791. Department One. August 11, 1914.]

PAUL CUNNINGHAM *et al.*, *Respondents*, v. W. L. WEEDIN *et al.*, *Appellants*.[1]

HIGHWAYS — OBSTRUCTIONS — RIGHTS OF ABUTTING LANDOWNER. Abutting owners may maintain an action for the removal of an obstruction in a highway.

ADVERSE POSSESSION—PROPERTY SUBJECT—LAND FOR HIGHWAY. Title to unused portions of a highway established along a section line but not laid out on the ground cannot be acquired by adverse possession, where the line of travel followed the line of least resistance along a route laid out by volunteers, the road had been used since first laid out, and it was generally understood that the road would be opened when the county was able to do so.

HIGHWAYS—ESTABLISHMENT—OPENING AND USER—ABANDONMENT. Where a highway was established along a section line but not laid out on the ground, but the line of travel followed the line of least resistance along a route laid out by volunteers, the county acquires an easement in the highway in trust for the public, and can later change the line of travel to the true line, in the absence of circumstances creating an estoppel.

BOUNDARIES — MONUMENTS — GOVERNMENT CORNERS — LOCATION— EVIDENCE. The evidence is sufficient to show the existence of a quarter section corner as located one hundred and five feet west of a true north and south line between two sections, where there was positive testimony of plaintiffs' witnesses, who had lived in the locality many years, that they had knowledge of such quarter corner, it having been pointed out to some of them, while others testified to the location of a cemetery and certain other lands by reference thereto, the only testimony in opposition thereto being of a negative character.

Appeal from a judgment of the superior court for Island county, Ralston, J., entered October 9, 1913, upon findings

[1]Reported in 142 Pac. 453.

in favor of the plaintiffs, in an action to restrain obstruction of a road.   Affirmed.

*James Zylstra*, for appellants.

*Dan W. Locke* and *Dan W. Craddock*, for respondents.

CHADWICK, J.—Prior to the year 1893, the people residing in the vicinity of the road which has become the subject of this controversy, undertook to lay out a road along the section line between sections 17 and 18, township 29, north, of range 3, east, in Island county.   The road is what the witnesses call a volunteer road.   It was put through the timber by the labor and at the expense of those who were interested in it as a way of travel.   In 1893, all of the people in that neighborhood, including defendant W. L. Weedin, petitioned the county commissioners to lay out and establish a county road along the section line.   The county commissioners ordered the road established, but the county being without funds at that time, the road was not laid out on the ground, but was traveled along the route laid out by the volunteers, it being generally understood that the road would be opened when the county was able to do so.   Some of the witnesses described the road as having kinks and turns.   Men who worked on the road said that they had no way to remove rocks and stumps, or to cut down hills, or to bridge low places, and that they went against the lines of least resistance.   While there is a dispute as to the section line, to which we shall presently refer, it is certain that the road did not follow a true north and south line between the premises of the parties to this action.   In 1913, the road supervisor undertook to straighten the road and put it upon the section line.   In so doing, he encroached upon a part of the lands enclosed by the defendants, which lands have been enclosed for many years, first by a brush fence, then by brush fence with wire, and finally by boards with wire.   Defendants, contending that the road had been established by user and that the road was not being put on

the true section line, and that they had title to the enclosed land by adverse possession, put obstructions in the way and blew out a culvert, whereupon this action was brought to restrain them from further interference. A decree in favor of plaintiffs was entered below, and defendants have appealed.

The first contention here is that an abutting landowner cannot maintain a suit for the removal of an obstruction in a public highway. This court, in line with what it has considered to be the better opinion, has settled the rule that such actions can be maintained by one who is in the situation of these plaintiffs. *Sholin v. Skamania Boom Co.*, 56 Wash. 303, 105 Pac. 632, 28 L. R. A. (N. S.) 1053; *Sweeney v. Seattle*, 57 Wash. 678, 107 Pac. 843; *Brazell v. Seattle*, 55 Wash. 180, 104 Pac. 155; *Smith v. Centralia*, 55 Wash. 573, 104 Pac. 797; *Humphrey v. Krutz*, 77 Wash. 152, 137 Pac. 806.

The real question of law involved is whether a road, established of record along a defined line but which has never been formally opened or laid out upon the ground, will bar the public from afterwards changing the line of travel to the true line. This question has been settled by this court. In the case of *Clark v. Seattle*, 71 Wash. 316, 128 Pac. 670, we held:

"Where the line of travel, in order to avoid hills, ravines and like topographical obstructions in the authorized way, leaves it for the purpose of going around the obstacle and, when passed, again enters the authorized way, that this is as much an opening and public use of the untraveled portions of the road as of that part actually used."

This being so, it follows that no right in the untraveled part of the road can be gained by adverse possession. A county holds an easement in its highways in trust for the public. *Sumner v. Peebles*, 5 Wash. 471, 32 Pac. 221, 1000; *West Seattle v. West Seattle Land & Imp. Co.*, 38 Wash. 359, 80 Pac. 549; *Rapp v. Stratton*, 41 Wash. 263, 83 Pac. 182. An easement, once asserted by the public, will not be lost unless in virtue of some statute, or nonuser for a time, and under such circumstances as will create an estoppel. 37 Cyc.

195. As illustrative of our argument, it is only necessary to call attention to the fact that, in recognition of this principle, we have a statute vacating roads that have not been opened or traveled for a certain number of years. Rem. & Bal. Code, § 5673 (P. C. 441 § 83). This statute does not recognize any right of adverse possession in the former or present owner of the abutting property, but is based upon the common law of presumption of abandonment. No such presumption attends this case. The road has been used by the people since it was first laid out. It, like hundreds of other roads in unsettled portions of the state, has wound its way around natural obstacles and, no doubt, at times its path has led entirely outside of the right of way. It has been so in every new or sparsely settled country. As population grows and land becomes valuable, an individual may fence his holdings and insist that the travel, which for convenience may have cut across his land without regard to the survey, shall follow the path shown upon the records. The cases sustaining the holding of the trial judge are, collected in the *Clark* case, and in 37 Cyc. 199.

Appellants have brought the record of the establishment of the road to this court and ask us to find, in aid of their contention, that, because of informalities in the proceeding, the road has no legal existence; that the statute of limitations has run in their favor; and that the proceedings were insufficient to warrant a finding that a lawful road was laid out on the section line as the trial judge found it to be.

It is unnecessary for us to make a technical examination of this record. A casual inspection of it, taken in connection with the whole testimony and the testimony of the defendants, convinces us that it was sufficient and that it was the intention of the whole neighborhood to put the road upon the section line as it was established. In fact, that is all there is to this case, both sides insisting that it be put upon the section line. The only question remaining therefore, is one of fact: that is, the location of the section line.

It is the contention of the defendants that there was no quarter corner on the line between sections 17 and 18; that the line ran in a straight line from the intersecting corner on the north to the intersecting corner on the south; whereas, the line, as contended for by the plaintiffs, runs to a quarter corner 105 feet west of a true line drawn from the north boundary of the section to the south boundary, and about 28 or 29 feet west of the same straight line as drawn between the lands of the plaintiff and the defendants. The surveyor who surveyed the road in 1893 says that he did not see a quarter corner. A surveyor who surveyed the line of the road and who was a witness for defendants, says that he assumed that the line between sections 17 and 18 was a straight line north and south with the usual variations. On the other hand, one of the volunteers who made the road says—we will give the testimony in narrative form—I knew where the section corner was for Mr. Weedin had shown us the corner by the school house, and Mr. Johns and Mr. Evans had shown us a quarter corner at the graveyard and there was a stake there that looked just exactly like a government surveyor had made it. Another neighbor, who lived there at the time the land was surveyed, and who helped work the original road, says that the quarter corner was pointed out to him by one of the chainmen about two days after the survey; that it was in the early 70's; there were witness trees; that thereafter he and the defendant Mr. Weedin, whose land adjoined his, measured out an east and west line, and that the quarter corner was their starting point. Another witness, who was there when the government surveyor located the corner, affirms his knowledge of it. He thinks it is in the middle of the road as now established. He says he does not think it has been changed from its original location, although everything is cut away from there now. Another witness testifies to the location of the cemetery by measuring from the quarter corner. Another neighbor who helped locate the cemetery ground testified to the same fact. A witness testified that he located his land some thirteen years

ago by taking the quarter corner as it is now located for his starting point. The surveyor who surveyed the road originally says that he found the section corner posts and witness trees at both corners of the section; that he ran a random line south on a variation of N. 22° 50'; that he did not have the United States field notes and that he did not find the quarter corner. This is only negative testimony and cannot be held to be controlling as against the positive testimony of plaintiffs' witnesses; for if, in fact, the quarter corner was located one hundred and five feet west of a true north and south line, it is not likely that it would be noticed by him in a densely timbered country. Other questions are raised, but we find no merit in them.

We think the evidence clearly preponderates in favor of the finding of the trial judge, and that his decree establishing the road on the line between the section corners and the quarter section corner as it was located and its location is now fixed upon the ground by testimony of the witnesses, should be held to be the true line of the highway.

Affirmed.

CROW, C. J., MAIN, ELLIS, and GOSE, JJ., concur.