MARY MEYERS, Appellant, v. JOSEPH WONICK et al., Appellees.

**HIGHWAYS:** Establishment—Boundaries—Evidence. Evidence as to the true line of a highway reviewed, and held insufficient to justify the decree of the trial court.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

TUESDAY, JUNE 19, 1917.

CONTROVERSY over location of a highway. On hearing, the petition was dismissed. Plaintiff appeals.—*Reversed.*

*Bailey & Murphy,* for appellant.
*Otto & Otto,* for appellees.

LADD, J.—Plaintiff owns Lot 3 of Sec-tion 5 in Township 80 North, Range 6 West of the 5th P. M., as surveyed by the govern-ment, and defendants Frank and William Lovetinsky, Lot 1 of Section 8 to the south. Between these tracts is what is known as the Sugar Bottom Road. Ow-ing to a controversy as to whether defendants were en-croaching on this road with fences, they called out the other defendants as trustees of Newport Township, to fix the lines where fences should be located, and had a survey made by Ott, to ascertain the section line. The trustees ordered the fences removed to a line 20 feet each way from the line as established by this surveyor. The only issue is whether the section line was as staked and platted by this surveyor, though considerable evidence was adduced tending to show that the fences as now existing were in the highway. Holt

surveyed the line at the instance of plaintiff. The highway record describes the road as "commencing at a point on the east bank of the Iowa River, where the section line dividing Sections 5 and 8, Township 80, Range 6 West, crosses said river, from thence on said section line west to northeast corner of Section 8 aforesaid, etc., said road being 40 feet wide." The northeast corner of Section 8 is not in dispute, and Ott testified:

"As I went along west, I found a stone at the half mile, three-quarters and mile, half-section line, three-quarters and mile stone. The half-mile stone is located 1,122 feet south of the true line. I determined that by running a line from the northeast corner of Section 8 clear across the section and back by the rock, and I found that rock too far south by 17 links, or 11.22 feet. The quarter-section stone is imbedded on the west slope of a hillside with heavy timber surrounding. This is the one I referred to. That is called the quarter stone, but it is the half-section stone. The mile stone is out in the open and clear ground. After I made the survey of the center of the road, I made the plat showing the location of the fences on the north and south side of the road in question. By referring to the plat, the Myers fence at the west end near the river about the edge of vegetation is 14.72 feet in the road. I took 5 measurements. At the starting point east end, the Myers fence is 2.3 feet in the road. Down near Mr. Myers' gate, he was 4 feet in the road. The next angle, the same distance. The last angle, 8.12 feet, and down near the river, as I stated before. The fence there turns very abruptly into the highway. The fence was all smashed down and drift wood piled on it. I think at a former time I recognized where the fence had been moved, but not this last time. I made a survey relative to that Sugar Bottom Road three times, and in making the survey, I followed the field notes as recorded in the auditor's office."

Cross-examination.

"In order to ascertain the true location of the section line between those portions of Sections 5 and 8 which lie east of the Iowa River, I ran a line from a stone on the east side of those two sections to a stone which I believed to be on the west side of those two sections. I believed the stone I found on the west line of those sections was at the northwest corner of Section 8. * * * I assumed, yes, sir; but the assumption was based on this by it lining up as it did with the other stones."

As the land had been cleared of timber, he did not look for bearing trees or their stumps, nor did he dig for marking stone in the vicinity. He—

"Saw it was useless to attempt to find anything to identify it. * * * I found the survey that had been made there some years previous, and I took up the line or stakes and ran them from the northeast corner of Section 8 to the center. I traced those stakes and took up this line and just continued that on as the random line. Then I corrected back and located the true line. * * * I reached the conclusion that the true line between Sections 5 and 8, as indicated by this plat, was reached by running a straight line due east and west between this stone on the west side of Sections 5 and 8 and the stone on the east side of Sections 5 and 8. This stone at the east side of Sections 5 and 8 is the stone included in the circle on the plat that is marked 4, 5, 8 and 9. The little portion of the survey running east of the circle has no bearing upon the matter at all. * * * Q. You also found a stone, did you, the quarter quarter section stone on the west of that section stone? A. Yes, sir. Q. Now, then, does your plat correctly indicate the location of that quarter quarter section stone? A. Yes, sir, that is its relation to the true line. Q. Your plat shows that that isn't right in that line, it seems to

be a little north? A.  It is ten links north of it.  I could readily see why that situation exists there, for the reason that the rock was planted on the north side of a ditch and it has been washed in and evidently someone has picked it up and set it on the bank."

Plainly enough, the stone found near the northwest corner of Section 8 was in no manner identified as that marking the corner.  From the circumstance that it was about the necessary distance from the stone at the northeast corner, the witness inferred that it might be a stone set by the government.  But this was merely a guess concerning a matter which might have been ascertained with some degree of certainty by running lines to the north and south to known corners.  Again, the surveyor infers, without the slightest evidence on which to base an inference, that someone has moved the stone marking the quarter quarter corner.  What he suggests may have happened, but it is unnecessary to speculate thereon in the absence of evidence.  Holt testified to having examined the certified copy of the government field notes and plats in the county auditor's office; that he next found the principal object of his search:

"A stone, which marks the northeast corner of Section 8, and a stone which marks the quarter-section corner of the north line of Section 8.  The next thing I did was to establish first by use of a random line then running to the random line a true line to establish a straight line between the stone which marks the northeast corner of Section 8 and the stone which marks the quarter-section corner on the north line of Section 8.  The first line I run was of necessity a random line merely as a means of getting a true line between the two stones.  I did finally locate a straight line between the two stones I have mentioned, as the fences were not, of course, straight lines, but the center of the highway, as near as could be determined by a slightly irregular fence

line, coincided with the line I ran. I made the survey in early part of May, 1915. The highway in controversy begins on the east bank of the Iowa River. This quarter-section corner I spoke of is some little distance west of the river. The stone at northeast corner of Secton 8 is about 1,900 feet east of the river bank."

The witness then described measurements showing that both landowners had constructed their fences in the highway, and proceeded:

"I have since made a little further examination to convince myself that the stones between which I ran the line were true section corner and quarter corner. * * * I made a search for bearing trees as given by the original notes of the government survey. At the quarter section corner, I found the remains of a stump, which is evidently, or was evidently, the government bearing tree, one of the government trees at the quarter-section line. The bearing tree was an oak a certain distance in a certain direction from the stone at the quarter corner. I found there at that point the rotted and covered-over stump of a tree. Q. Were there any other bearing trees given at that point? A. In the original notes, an ironwood tree was mentioned. The ironwood tree itself could not be found. There were, however, several small ironwood saplings, from the size of a broomstick up to three inches, growing right around where this original ironwood tree had been."

He observed no other ironwood trees in the vicinity.

"I know that was the quarter section stone by the bearing tree, by evidence of its distance from the northeast corner, by evidence of adjoining landowners, and in a general way by the appearance of its location and in respect to the fence line. Q. What adjoining owner did you talk with? A. Particularly with Mr. Alt, who lives across the river from the road."

Both surveyors speak of the stone as marking the quar-

ter corner, and the evidence of Holt tends strongly to identify it as that originally planted as the quarter corner in the government survey. The line from this stone to the stone at the northeast corner of Section 8 corresponds with the fencing of the highway, and the court should have decreed that said line was the section line and in the center of Sugar Bottom Road, and that the boundary lines of said road were 20 feet each way from said center, and that the plaintiff and defendants Lovetinsky should remove their fences out to these lines. See *Quinn v. Baage*, 138 Iowa 426.

The costs in the district court will be equally divided between plaintiff and the Lovetinskys, and in this court will be taxed against the latter.—*Reversed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.