COULTER, Appellant, v. GUDEHUS, Respondent.

(139 N. W. 330.)

1. **Trial—Law of Case—Conflicting Instructions—Boundary Lines— Survey.**

Where, in an action to determine a disputed boundary, plaintiff claimed that a certain location was marked by a mound as an original government corner and was neither a lost nor an entirely obliterated corner, and the court charged that, if the jury found from a preponderance of the evidence that the mound was the original government mound, their verdict should be for plaintiff because the location of such mound was undisputed, which instruction, being unexcepted to, became the law of the case, held, it was error to further charge that, before the jury could find for plaintiff, it must also find that the identity of such mound was unquestioned by any evidence; that it was error to further charge that where the location of the monuments is uncertain or in doubt, the government field notes "will control" in determining its location; that such instruction is not warranted by Sec. 923, 926, Pol. Code.

2. **Boundaries — Government Monuments — Questioned Mound — Courses and Distances—Field Notes, Etc.**

When a question is raised as to whether a certain known mound is a government mound, then courses and distances, all surrounding visible evidences, government field notes, the calls, and everything fairly tending to aid the jury in determining whether the original mound still exists, may be considered; the rule being only that unquestioned government monuments will control over courses and distances.

3. **Same—Disputed Corner—Open to All Evidence—"Questioned" Corner—"Uncertain, Doubtful, or Lost Corner"—Field Notes —Evidence—Instruction.**

The location of a disputed corner is an open question to be determined from all the evidence, and, when determined, it controls. The fact that a certain corner is "questioned" does not make it an "uncertain, doubtful, or lost corner," nor render field notes controlling in such determination. But, where the government corner cannot be located by clear and satisfactory evidence, field notes of government survey are prima facie evidence of location of such corner. **Held**, further, that an

instruction which assumed in effect that a "questioned" corner was an "uncertain, doubtful, or lost" corner, was erroneous.

**4.   Limitations—Adverse Possession—Claim of Title, Extent of—Patent.**

Where, in a boundary dispute, plaintiff claimed under a patent to the northwest quarter of a specified section, defendant claimed the land in dispute was no part of that quarter, a requested charge that if plaintiff for over twenty years held possession of the land under claim and "color of title," etc., he was entitled to recover, was erroneous, since plaintiff's "color of title" extended only to the land described in his patent, and the patent could not operate as such color of title except as to land embraced in its description.

Haney, J., not sitting.

(Opinion filed Jan. 6, 1913.   Rehearing denied Feb. 19, 1913.)

Appeal from Circuit Court, Brookings County.   HON. GEORGE H. MARQUIS, Judge.

Action by George Coulter against Theodore Gudehus, to determine ownership of certain land.   From a judgment for defendant and an order denying a new trial, plaintiff appeals.   Reversed.

*Olaf Eidem* and *J. P. Alexander,* for Appellant.

It is respectfully submitted that under the evidence, and the charge of the court, the jury were not justified in disregarding the mound and pits relied upon by the plaintiff and identified and described by numerous witnesses, both for the plaintiff and the defendant, and in finding that the corner in question had been lost.

It appears from the evidence that the proprietors of all four of the quarter sections converging at the corner in dispute, at the time of making the improvements mentioned therein, treated the said "travelled road or track," so often referred to in the testimony of Mr. Yeager, as the division line between sections 12 and 13 and also treated, for the purpose of such improvements, the point where such "traveled road or track" intersected the east line of Kochendorfer's grove and the west line of Yeager's firebreak, which were identical, and the east line of plaintiff's breaking and the west line of Oertley's pasture which were identical, and all of which constituted one continuous north and south line, as the corner common to all four of said quarter sections; and this point is now occupied by the mound described by the county surveyor and claimed by the plaintiff to be the government corner.

This "travelled track or road," shortly after the survey of the

county surveyor above mentioned, extended from the known east corner common to the two sections directly to the mound, passed immediately south of the same and continued from thence to the west section corner. This is the testimony of Surveyor Hegaman; and he locates the mound as 8 or 9 feet south of the southeast corner of the grove, thus placing the road as it existed at the time of Wescott's survey, exactly where Mr. Yeager located the "travelled track" at the time of the planting of the grove by Kochendorfer. (Abst. p. 39.).

It is impossible that there could have been any appreciable change in the location of this "travelled road or track" at the point where the same passes the corner in question, subsequent to the improvements above mentioned for numerous reasons.

The uncontradicted testimony shows that the area of cultivation on the plaintiff's farm and on the Oertley farm, in the locality of the corner in dispute never extended north of the north line of plaintiff's first breaking in 1883. This being the fact, it is incredible that the outline of the Kochendorfer grove, on the south, was changed by the dying out of five or six rows of trees as surmised by the witness, Yeager. The southern boundary of the grove could be checked up by the boundary of the improvements on the south, plaintiff's breaking and Oertley's pasture, and the travelled road which has been shown to have remained practically unchanged and by Yeager's firebreak and fence on the east. Any material recision of the southern boundary of the grove, by the death of rows of trees must have been instantly noticeable by comparison with those land marks. Hence, as the southern outline of the grove still remains practically unchanged with reference to all these land marks, as described by Mr. Yeager himself, he must have been mistaken in supposing a number of rows of trees died out.

It thus appears that all of the early proprietors in improving their land about the corner in dispute treated the point occupied by the mound referred to as the common corner between them.

It is therefore respectfully submitted that, under the circumstances detailed, the making of all these improvements by the earliest proprietors, and the establishment of these permanent land marks, at a time when the complete government monument, consisting of stake, mound and pits, was plainly visible, all of which

improvements and land marks point to the adoption of a certain place as the location of a common corner for their several holdings, and which location was acquiesced in by all such proprietors and their grantees for more than a quarter of a century, would at least, raise a very strong presumption that such location was at the point where the said government monument then existed.

Add to this the fact testified to by the county surveyor, that there exists at that point a well defined mound and the semblance of a pit at the proper distance to the east of the same. Supplement this with the testimony of witnesses who are familiar with the corner when the government monument existed in its entirety and all of whom identify the mound as the place where such monument originally stood. .

The issue decided here was not as to whether the monument was located in one of two places, to-wit: the place described by the witness Yeager or the place designated by all the other witnesses who testified upon that subject. In which case the defendant might appeal, to the rule that courts of review will not disturb a verdict which is supported by any evidence. The question which the jury, upon this trial, was called upon to decide was whether or not the testimony of Yeager was sufficient to raise a substantial doubt as to the genuineness of the existing monument corroborated as it was by all the ancient land marks, the acts of the early settlers, and subsequent proprietors of the contiguous lands, and the testimony of witnesses who claimed to know the original location of the corner, to such an extent as to justify a finding that the situs of the original corner was "lost." Wentzel v. Claussen, (S. D.) 127 N. W. 621; Hookman v. Iowa Civil Township, (S. D.) 132 N. W. 1044; Clymer v. Wallace, 28 Mo. 556, 75 Amer. Dec. 135.

Wherefore it is submitted that the mound south of the corner of the Kochendorfer grove, having been identified as a part of the original government monument, marking the quarter section corner in question, and such identity being corroborated by calls, fences, highways and other land marks, and the testimony of witnesses who knew its original location in the manner required by law, for the establishment of lost or obliterated corners, and no sufficient testimony having been produced sufficient to raise a reasonable doubt of the correctness of such identification or to justify

the relocation of such corner at a point confessedly different from that at which it was originally located, the verdict for the defendent was not sustained by sufficient evidence and should therefore be set aside and a new trial granted.

It is elementary that declarations of persons in the possession of land as against themselves and those claiming under them are competent. Beecher v. Parmele, 9 Vt. 352, 31 Am. Dec. 633 and cases cited.

The matters referred to by witness Yeager were proper subjects of inquiry on cross-examination and the rulings of the trial court under which the plaintiff was inhibited from pursuing them was prejudicial.

"The cross-examination would be of little value if the witness could not be freely interrogated as to his motives, bias and interest, or his conduct as connected with the parties or cause of action; and there would be little safety in judicial proceedings if an unscrupulous witness could conclude the adverse party by his statements denying his interest or prejudice in the controversy." Jones on Evidence, Sec. 829; State v. Mulch (S. D.) 96 N. W. 190. (See Abst. p. 148).

This instruction was not only misleading, but is absolutely incorrect as a statement of the law laid down in numerous decisions of the Supreme Court of this state, relating to the judicial establishment of disputed boundaries. It has never been held that in order to justify a court in locating a disputed corner or boundary at a place where the same was held to have been originally located by the government survey, it was requisite that there should still exist "unquestioned monuments," placed there by the original surveyors to mark such corner or boundary, or that there should remain any vestige of the original monuments erected by such surveyors. It has always been held sufficient if the place where such marks or monuments had previously existed could be identified by competent evidence. Furthermore, neither by statute nor judicial interpretation has any special or peculiar rule of evidence been provided or adopted by which courts should be governed in the determination of questions relating to boundaries, other than those which prevail in other civil actions. The Political Code, sectons 920-927, provide certain rules for the government of the county surveyor in the performance of his duties therein specified.

Among these is the provision that in resurveys and subdivisions of lands he should be governed by the laws of the United States and the instructions issued by the officers thereof in charge of the public surveys. (Section 923.)

Instruction number one was misleading because, from it, the jury was led to understand that they could not locate the boundary and the disputed corner at the places where such boundary and corner were originally located by the United States surveyors, unless such boundaries were "fixed and known," and "unquestioned monuments exist," and that if the evidence left any doubt as to where such corner was originally located and marked by the government surveyors, that they must then be controlled by by field notes. Whereas the true rule would be that they should determine from the preponderance of the evidence whether or not the place where the original government monument, marking the corner in dispute, had been erected as other cases. Unzelmann v. Shelton, 103 N. W. 646.

The same position was taken by this court in each of the following cases: Tyler v. Haggart, 102 N. W. 682; Arneson v. Spawn, 49 N. W. 1066; Randall vs. Burke Twp., 57 N. W. 4; Hanson v. Red Rock Twp., 57 N. W. 11; Dowdell v. Cornue, 68 N. W. 199; McGray v. Elevator Co., 99 N. W. 457.

Instruction number four was refused and the refusal was assigned as error.

It is claimed that this requested instruction correctly states the rule of evidence applicable to boundary cases as set forth in the authorities cited upon the instruction last under consideration. Reference is further called to the fact that the location of the original government monuments marking the corner in dispute was definitely identified by the witnesses on the part of both parties to this action.

Upon the pleadings and evidence the plaintiff requested the court to give the jury instruction number five. This request was refused by the court, to which the plaintiff excepted and now assigns error. (Abst. page 153.)

The court also failed to submit to the jury in any manner the plaintiff's said claim of title by adverse possession. Sections 44, 48, Code of Civil Procedure.

It is respectfully submitted that the allegations and proof on the part of the plaintiff were sufficient in the absence of successful contradiction, to establish his right to the possession of the controverted tract under the statutes quoted and the requested instruction ought to have been given. Nash v. North West Land Co., (N. D.) 108 N. W. 792; Bryan v. Atwater, (Conn.) 5 Day 181, 6 Amer. Dec. 136.

The rule governing the case at bar is stated in 1 Cyc. 1038 thus: "Where a person acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another claiming it to be his own up to a mistaken line, claiming title to it and so holding, the holding is adverse, and if continued for the requisite period will give title by adverse possession." Citing authorities from the decisions of twelve states. The following decisions are in consonance with this rule: French v. Pearce, 8 Conn. 439, 21 Amer. Dec. 680; Yetzer v. Thomas, 17 Ohio St. 130, 91 Amer. Dec. 122; Meilke v. Dodge, 115 N. W. 1099, Wis.; Weeks v. Upton, 109 N. W. 828, Minn.; Ramsey v. Glenny, 48 N. W. 322, Minn.; Rice v. Kelly, 115 N. W. 625, Neb.; Ovig v. Morrison, 125 N. W. 449, Wis.

On the question of adverse possession of land beyond true boundary line, see case of Edwards v. Flemming, 33 L. R. A. (N. S.) 223, Annotated. The notes contain exhaustive and complete analysis and classification of authorities.

The evidence of adverse possession was undisputed and therefore, for the reasons above stated, it was insufficient to sustain the verdict. (See specification Abst. folios 544-548.)

*Hall, Roddle & Purdy,* for Respondent.

Plaintiff claims that the court erred in sustaining defendant's objection to the following question propounded to the plaintiff, referred to in Assignment of Error No. 2. (Folio 33).

"Q. What was said in regard to the line, if anything?"

Clearly, what Mr. Kochendorfer may have said in regard to the line ,if anything, would not be binding upon the defendant, except as an admission by a grantor, at a time when he was the owner of the property, and contrary to his interests. No foundation of that character was laid whatever prior to or at the time of asking this question. Bristol v. Skapple (N. D.) 115 N. W. 841.

"Q. How many years has this mound remained undisputed while you were living on the premises?"

This clearly calls for a conclusion of the witness of a negative character, and not for any fact, and the objection was properly sustained. Beecher v. Galvin (Mich.) 39 N. W. 469.

There was no error in the ruling of the court in admitting the record of the relocation of the quarter corner in dispute. The plaintiff's objection thereto (Folio 326) in substance was "That it shows on its face that this quarter corner in dispute was not a lost or obliterated corner; or that its location could not be established by external evidence satisfactorily, without making a survey or drawing a straight line." It will be seen by this record, (Folios 327-333), kept in accordance with the provisions of 923 Pol. Code, that it shows on its face that a careful examination of the alleged "Coulter mound" was made, describing its appearance, and that diligent inquiry was made of the people living in the vicinity with reference thereto, resulting in the statement that the general information (except from interested parties) showed that it was not the original Government corner. Further it provides that "investigation of the aforesaid mound yielded no good evidence in the matter," and that it was 100 feet north and 30 feet west of the proper point Therefore he, following the provisions of 926 P. C. which requires that he "shall not give undue weight to partial and doubtful evidences or appearances of monuments, the recognition of which shall require the presumption of marked errors in the original survey," proceeded, as shown by his report, to locate the corner in accordance with the Government field notes.

"Q. You recognized this line running north and south along the west boundary of this farm? A. Yes sir.

"Q. As being correct according to the Government survey and the Government monument?"

It will be observed that the witness answered the only proper question, as to whether he recognized a certain line north and south as the west boundary of his farm. The next question called for merely a conclusion as to the correctness thereof, and was immaterial. (Bristol v. Skapple, 115 N. W. 841, 842.)

It will be noted by the record that a number of questions along the same line were permitted by the court to be asked and

answered, including the fact that Mr. Gudehus came to see the witness at Huron, and that he had had a controversy with the plaintiff in regard to a cow. Wherefore it cannot be claimed that the court refused to permit any cross examination as to the feeling or bias of the witness, and the court merely exercised a proper discretion in limiting the extent of the cross-examination.

As said by this Court in State v. Frazer, 121 N. W. 790-791.

"While it may be reversible error not to permit any cross examination as to feeling or bias of a witness, the extent of such cross examination rests in the sound discretion of the trial court."

"If such examination (cross examination) is arbitrarily limited by the court while being conducted by a counsel in a proper manner, it is error." Jones on Evidence, Sec. 842.

One of the questions to which an objection was sustained was "How much are you being paid, if anything; who pays your expenses here as a witness?" The question is double, ambiguous and assumes a fact not shown to exist, and was evidently not intended for the purpose of eliciting material evidence, but by the question itself, to prejudice the witness in the eyes of the jury. The court evidently took this view of it and exercised its discretion by sustaining the objection interposed. Kerr v. Melum, 130 N. W. 83.

Instructions.

Counsel for plaintiff claims that the instructions of the court were substantially that "there should still exist unquestioned monuments, placed there by the original surveyors to mark such corner or boundary" or that it would be considered a lost corner. We submit that the instructions do not so state directly or inferentially, and that on the contrary the court very carefully drew the distinction between a lost corner and one which was merely obliterated but whose location could be determined in the manner provided by statute and the rules and instructions of the United States. A copy of the instructions to surveyors issued by the United States government for the establishment of lost corners was introduced in evidence. The definition of a "lost corner" contained in this document is as follows: "A lost corner is one whose position cannot be determined beyond reasonable doubt, either from the original marks or reliable external evidence." This official and authoritative definition of a lost corner by the U. S.

government has been substantially incorporated expressly into our statute. Sec. 926 Pol. Code.

The instructions of the court in this respect were principally quotations from the case of Hanson v. Red Rock Twp. 4 S. D. 358, 365.

When it came to the question of the burden of proof as between the parties, the court gave instructions exactly in conformity with what plaintiff contends for in his brief.

The substance of instruction No. 4 was given by the court in other instructions, and in particular, to have given it would have been substantially a repetition of plaintiff's requested instruction No. 2, which was given.

Plaintiff assigns as error, the refusal of the Court to give requested instruction No. 5.

The evidence in the case throughout, including the testimony of the plaintiff, showed that his claim of title to the strip in controversy was based upon his contention that it was included within the boundaries of his quarter section, and shows that he made no claim to any land not included within its boundaries. The evidence throughout was directed to determining the true boundary between the lands of the parties hereto. The case therefore fell squarely within the rule that where one, "through inadvertence or mistake, takes possession beyond the true boundary line, with the intention merely to hold the true boundary, his possession beyond the true boundary is not deemed to be under a claim of title of ownership, and consequently it is not adverse." 2 Ency. L. & P. 402.

The instruction requested, entirely ignored this important feature of the case, and therefore it was properly refused. 11 Ency. P. & P. 188.

It will be noted that the complaint, (Folio 4) does not contain any allegation that the plaintiff's occupation of the controverted strip was adverse, nor does the evidence show that it was adverse, but on the contrary shows that it was under a mistake as to the true boundary line. Under all authorities and under our statute, to constitute a title by prescription, the plaintiff must have claimed title "adversely to such legal title" of the defendant's. (Sec. 46, Code of Civil Procedure). The plaintiff claimed, under

a patent to the northwest quarter of section 13, from the government and only claimed such land as he contended was contained within its boundaries. Section 47, Code of Civil Procedure.

"Where the occupation of the land is by a mere mistake and with no intention on the part of the occupant to claim as his own, land which does not belong to him, but he intends to claim only to the true line, wherever it may be, the holding is not adverse."

1 Cyc. 1037. And numerous cases cited in note 96, including Alabama, Ark., Cal., Dist. of Columbia, Fla., Ga., Ill., Ind., Ia., Kan., Ky., La., Me., Md., Mass., Mo., Nev., N. Y., N. C., Oreg.. Pa., Tenn., Tex., Wash., Wis., and the United States Supreme Court, also Canada.

To the same effect, see Schaubuch v. Dillemuth, 15 A. & E. Ann. Cases, 825, and exhaustive note at the end of the case.

The reason why such occupancy and possession could not be adverse is because the intention to hold adversely is an indispensable element of adversary possession.

"No matter how exclusive and hostile to the true owner the possession may be in appearance, it can not be effectually adverse unless accompanied by the intent on the part of the occupant to make it so." 1 Cyc. 1028, Id., 1026-7; Hacker v. Horlemus, (Wis.) 34 N. W. 125, 127; Jordan v. Ferree, 70 N. W. 611.

Evidence of adverse possession is always to be construed strictly, and every presumption is to be made in favor of the true owner. Such possession is not to be made out by inference, but by clear and positive proof. Such is the language of the authorities, and the rule is well settled. 37 N. H. 367; 13 id. 485; 3 id. 26, 50; 10 id. 402; 9 Johns, 167; 1 id., 157; 8 id., 220; 12 id. 367; 10 Mass. 146; 4 id. 418; 14 Pick. 228; 3 Greenl. 131. And the same principle governs wherever adverse user or enjoyment is relied upon as the foundation of title, or any right, claimed against the party otherwise shown to be the owner. 23 Wis. 555, and cases there cited; Kirk v. Smith, 9 Wheat., 288." Sydnor v. Palmer, 29 Wis. 226, 251, 252; 1 Cyc. 1143.

Fuller v. Worth (Wis.) 64 N. W. 905.

"In the absence of evidence of intention to hold adversely, the presumption would be that he designed to hold only to the true line." Tamm v. Kellogg, 49 Mo. 118.

Courts require stricter proof of a plaintiff, to establish a title

by adverse possession, than they do where it is used as a defense. Skipwith v. Martin, 50 Ark. 141, 6 S. W. 514.

WHITING, J. Plaintiff and defendant are, respectively, the owners of the N. W. 1-4 of section 13 and the S. W. 1-4 of section 12 of a certain township situate in Brookings county, S. D. Plaintiff brought this action to determine the ownership of a triangular piece of land which forms a part of the half section owned by these parties. Plaintiff claims ownership in this tract by virtue of 20 years' continuous possession thereof. He also claims ownership by virtue of patent from the United States government. Outside of the question of ownership through 20 years' possession, the ownership of this tract of land depends entirely upon the true location of the quarter corner common to these two quarters. The case was tried as a law case. The jury returned a general verdict for defendant. The court entered judgment in favor of defendant. Motion for new trial was denied, and plaintiff has appealed from such judgment and order.

The record discloses numerous assignments of error based upon the rulings of the court receiving and rejecting evidence. We have carefully examined this record, and do not believe there is any reversible error in such rulings. Appellant has specified numerous particulars wherein it is claimed that the evidence failed to sustain the verdict. After a full consideration of the evidence in connection with the instructions given by the court, we are of the opinion that, under such instructions, the evidence supported the verdict. The only question left for our consideration is whether or not the court erred in the giving of one certain instruction upon request of respondent, and in refusing to give two instructions requested by appellant. In order to properly pass upon such instructions, it is necessary to call attention, in a general way, to what the evidence showed. It appears that this part of the state was settled about the year 1880; that from the time of early settlement on for a number of years the section road between sections 12 and 13 ran close to the point claimed by appellant as the quarter corner; that at the point claimed by appellant there was a mound which several witnesses claimed to be the original government mound marking the disputed corner; that several years ago such mound was by the township supervisors recognized as marking such corner and a stone was placed there-

on; that certain fences and improvements had been made which recognized the corner as claimed by appellant. There was considerable other evidence tending to support appellant's claim, among which was the testimony of a surveyor, one Hegeman, who had made an examination of the said mound and its surroundings, and had questioned some of the old settlers. On the other hand, there was evidence tending to show that the mound claimed by appellant was not the original government mound; that such original government mound had become lost; that one Wescott, a surveyor, treating this corner as a lost corner, had, in accordance wth the laws of this state and the rules laid down by the federal government, located said corner at the point claimed by respondent. For the purposes of this appeal it must be conceded that Wescott properly located the corner, if the corner marked by the government surveyor had become lost. The point located by Wescott is some 100 feet south and 30 feet east of the point claimed by appellant.

The court gave the following instructions requested by appellant:

"Instruction 1. You are instructed that it is your duty to ascertan if possible from the evidence before you, the corner as indicated by the government monuments and mounds established by the government surveyor, if any, and if you find from the evidence that the quarter section corner contended for by the plaintiff, as being located about 30 feet west and 100 feet north of a certain rock, set by one Wescott, a surveyor, is the old government corner as located by the government surveyor, you will find for the plaintiff on all issues.

"Instruction 2. You are instructed that, if you find from the evidence the actual location of the corner as located by the government surveyor, this location must prevail and control, although it may not correspond with the calls in the field notes.

"Instruction 3. You are instructed that upon the issues of the location of a government corner or line you may consider the evidence of witnesses who claim to have knowledge of the original mounds made by the government surveyor, as well as all other evidence, such as the location of the highway, the construction of fences, the location of trees, ditches, or furrows which may have

been in existence for a long period of time, as well as the surveys that have been made."

The court refused the followng instruction requested by appellant: "Instruction 4. You are instructed that, if you find from the preponderance of the evidence where the original government monument and mounds were located, it will be your duty to establish the boundary accordingly, in preference to ascertaining the boundary line by courses, distances, and calls of the government surveyor's report."

The court gave the following instruction asked for by respondent: "Instruction 1. You are instructed that, while unquestioned government monuments will control over courses. and distances, yet you are further instructed that this does not apply where the evidences of an alleged government monument are doubtful or uncertain, and the rule is that monuments will control courses and distances only in case that such boundaries are fixed and known, and unquestioned monuments exist, and that where the boundary is not fixed and known, and the location of the monuments themselves is uncertain or left in doubt by the evidence, then courses and distances will be considered in fixing the boundaries, and the government field notes will control in determining the location of such uncertain, doubtful, or lost corner." The original record shows this instruction duly excepted to.

The court of its own motion gave the following instruction: "A lost corner is one whose position cannot be determined beyond a reasonable doubt, either from the original marks or reliable external evidence. You will notice that a corner may be obliterated, and not yet lost. If its location has been preserved, beyond all questions, by acts of landowners and by the memory of those who know and recollect the true situs of the original monument which marked it, then it is not lost, though obliterated. If, therefore, you find that the corner in question at the time Surveyor Wescott made his survey was an obliterated corner, one where no visible evidence remained of the work of the original surveyor in establishing it, but also find that its locaton had been preserved beyond all question by acts of landowners and by the memory of those who know and recollect the true situs of the original monument, then it was not a lost corner. If, however, at the time that Surveyor Wescott made his survey, the original mound, stake,

and pits marking the corner in question were obliterated, and had disappeared to such an extent that they could not be identified, and position of the corner once marked by them could not be determined beyond reasonable doubt, either by such original marks or reliable external evidence, then the corner was a lost corner. The plaintiff claims that the corner in question was never obliterated or lost, and that a certain mound is the original mound, and that near the same are still old and original pits, and that such mound and pits originally marked and still mark the corner established by the United States surveyor. Of course, if you find that such is the case, the corner was not a lost corner when the surveyor, Wescott, made his survey, nor is it now, nor has it ever been. The defendant, however, claims that the original mound, pits, and stake were completely obliterated over 20 years ago, and that the corner was at the time Surveyor Wescott made his survey a lost corner. The burden is on the plaintiff to show to your satisfaction by a preponderance of the evidence that he is entitled, under the instructions given you, to a verdict in his favor. If he has sustained that burden, your verdict will be in his favor upon all the issues. If he has not sustained that burden, then your verdict will not be in favor of the plaintiff, but will be in favor of the defendant upon all the issues." To the refusal of the court to give the instruction he asked for, and to the giving of the instruction asked for by respondent, appellant excepted.

[1] Respondent contends that the instruction given at his request is supported by the words of this court, and by the statutes of this state. This court in the case of Hanson v. Township of Red Rock, 4 S. D. 358, 57 N. W. 11, said: "The rule that fixed monuments will control courses and distances only prevails when the boundaries are fixed and known, and unquestioned monuments exist; and where the boundary is not fixed and known, and the location of the monuments themselves is uncertain, or left in doubt by the evidence, then courses and distances will be considered in fixing the boundaries."

Sections 923 and 926 of the Political Code of this state read: ".Sec. 293. The resurvey and subdivision of lands by all surveyors shall be according to the laws of the United States and the instructions issued by the officers thereof in charge of the public land surveys, in all respects. * * *

"Sec. 926. In retracing lines or making the survey· he shall take care to observe and follow the boundaries and monuments as run and marked by the original survey, but shall not give undue weight to partial and doubtful evidences or appearances of monuments, the recognition of which shall require the presumption of marked errors in the original survey, and he shall note an exact description of such apparent monuments."

Under the instructions to surveyors issued by the United States government, as proved upon the trial herein, "a lost corner is one whose position cannot be determined beyond reasonable doubt, either from the original marks or reliable external evidence." It must be borne in mind in this case that appellant was contending, and his evidence tended to show, that the corner was not only not lost, but not even entirely obliterated. If the jury should believe his witnesses, and, believing same, should find that the mound testified to by them was the original government mound, then its location was fixed "beyond a reasonable doubt" and "beyond all question," as stated in the instruction given by the court on its own motion. A careful reading of the court's own instructions shows that under such instructions the jury might find from a preponderance of the evidence that the mound claimed by appellant was the original government mound, and, if they so found, that then their verdict would have been for appellant because the location of such mound was absolutely undisputed. To this instruction appellant did not except, and it became the law of the case. But the instruction excepted to laid down a different rule. Under such instruction, it was necessary that the mound claimed by appellant as the government mound should be "unquestioned" or unchallenged before such mound would control over courses and distances. Under such instruction, the jury, before it could render verdict for appellant, must have found —not that the identity of this mound as the government mound was proven to its satisfaction by a fair preponderance of the evidence, or even beyond a reasonable doubt, but that its being such government mound was not even questioned by any evidence of the case. It will be noted that, under the instructions of the federal government, it is the "position" of the corner that must be established beyond a reasonable doubt by the surveyor. This is exactly in line with the instruction given by the court of its own

motion. There is absolutely nothing in the above sections of our statute that will support an instruction such as the one complained of. It will be seen that this instruction follows closely the words of this court in the Hanson Case, except that there is added, to what the court said, the clause, "and the government field notes will control in determining the location of such uncertain, doubtful, or lost corner."

[2] We think the last part of what was said in the Hanson Case lays down the correct rule of law and a rule sustained by numerous decisions not only in other jurisdictions but in our own, to-wit, "where the boundary is not fixed and known, and the location of the monuments themselves is uncertain, or left in doubt by the evidence, the courses and distances will be considered in fixing the boundaries." That "unquestioned government monuments will control over courses and distances" is supported by all authorities, and this is the extent to which the auhorities cited in the Hanson Case go. As soon as a question is raised as to whether a certain known mound is a government mound, not only all the surrounding visible evidences, such as improvements, may be considered in determining the existence of a government mound, but also the government field notes, the calls, the courses, and distances therein noted, in fact, each and everything that may fairly tend to aid the jury in determining whether the original mound is still in existence. Then, weighing all such competent evidence, the jury should determine, from a fair preponderance thereof, whether or not the mound contended for is the government mound, and, if the jury finds that it is, such finding controls. Randall v. Burke Twp., 4 S. D. 337, 57 N. W. 4; Arneson v. Spawn, 2 S. D. 269, 49 N. W. 1066, 39 Am. St. Rep. 783; Dowdle v. Cornue, 9 S. D. 126, 68 N. W. 194; Tyler v. Haggart, 19 S. D. 167, 102 N. W. 682; Unvelmann v. Shelton, 19 S. D. 389, 103 N. W. 646. See note 129 Am. St. Rep. 999.

[3] A reading of all the above decisions of this court will show that the location of a disputed corner is an open question to be determined from all the evidence, and, when determined, it controls. There is no hint that from the mere fact that a certain corner is "questioned" it becomes an "uncertain, doubtful or lost corner," and that the "government field notes will control in determining the location of" it. We approve of the following rule

laid down in Knoll v. Randolph, 3 Neb. (Unof.) 603, 94 N. W. 964: "The rule is that, where the government corner cannot be located by clear and satisfactory evidence, the field notes of the government survey are to be taken as prima facie evidence of the location of such corner." It follows that the converse is true— where the location of a government corner is established by clear and satisfactory evidence, such location must control over the field notes or over any question of where the corner should have been located by the surveyors. The instruction complained of was clearly incorrect, and it was prejudicial in view of the evidence.

[4] There is another instruction refused by the court of which refusal appellant complains, and, inasmuch as the same instruction might be asked for upon a new trial, we will briefly refer thereto. The instruction asked for was as follows: "Instruction 5. You are instructed that if you find from the evidence that the plaintiff in this action has for a period of more than 20 years held in possession the land in controversy under claim and color of title, and that the plaintiff has during all of that time usually cultivated and used the said land, with intent to claim title to the same, it will be your duty to find as against the defendant and in favor of the plaintiff upon all the issues." The appellant's "color of title" extended only to the land described in his patent. To any land outside of the N. W. ¼ of section 13 he could have, under his patent, no color of title, and to all land within such description he has unquestioned title. It follows that the refusal to give such instruction could in no manner harm appellant. One may, under a deed or other instrument, wrongfully "claim" title to land not described in the deed, and such claim may, under some circumstances, ripen into title; but it is absolutely impossible to stretch or expand a deed so as to make it "color of" title to any lands not described therein. If the land in dispute was not, in fact, a part of the N. W. ¼ of 13, appellant never had "color of" title thereto.

The judgment and order appealed from are reversed.

HANEY, J., not sitting.