KREIDER, Appellant, v. YAROSH, et al, Respondents.

(217 N. W. 640.)

(File No. 6328. Opinion filed February 4, 1928.)

*Miller & Shandorf,* of Mitchell, for Appellant.

*Heck & Thorson,* of Kimball , and *J. E. House*, of Chamberlain, for Respondents.

MISER, C.  Appellant owns the west half of section 11, township 102 north, range 68, in Brule county.  Respondents are the county commissioners and the highway superintendent of said county.  Appellant claiming that respondents were seeking to move a section line highway between said section 11 and section 10 to a location east of its former location where it would be entirely upon appellant's land, obtained a temporary injunction.  Respondents,

in their answer and counterclaim, ask the court to determine the true and correct boundary line along the proposed road. They had already constructed the road north from the northwest corner of appellant's land and south from its southwest corner, and admitted that they proposed to construct said road between said points. Respondents claimed that a straight line connecting said points along which they proposed to construct the road would be on the section line, and not on appellant's land. On trial, the court adopted as the correct location of the west section line of section 11 that found, designated, and monumented by Surveyor Mather, being the location along which respondents had proposed to construct said highway, and dissolved the injunction theretofore granted against respondent, and enjoined appellant from encroaching upon said highway. From this judgment, and from an order denying a motion for new trial, this appeal is taken.

■ Appellant's first and second assignments of error have to do with the exclusion of testimony tending to show that the section line, as now graded between sections 34 and 35, 27 and 26, 23 and 22, and 15 and 14, township 103, range 68, is according to a certain survey made by one Hayes, and that their witness Pierce never saw the original government corners along that line. Inasmuch as the offer to prove had to deal with a section line in another township than the one in which the proposed road is located, and is not even a direct, immediate continuation of the proposed road, but is separated therefrom by the road between sections 2 and 3 to the immediate north of the proposed highway, and because appellant erroneously assumed that respondents were seeking to locate said highway without regard to the government survey, and to merely straighten the road, we are of the opinion that no error was committed in its exclusion.

■ The third assignment of error presents a more difficult question. It appears that the subdivisions of township 102 were originally surveyed by one Newton Edmunds in 1868. Of the 25 interior corners as so located, Surveyor Mather has succeeded in finding 15. Lines running east and west through the corners so located are not only fairly straight and parallel, but are approximately 80 chains equidistant. Lines running north and south through these discovered monuments are neither straight nor parallel nor equidistant. For example: The south boundary lines of

sections 13 to 17, inclusive, according to government monuments, are of the following unequal lengths: Section 13, 81.98 chains; section 14, 78.75 chains; section 15, 82.30 chains; section 16, 74.08 chains; section 17, 80.88 chains. This illustrates the unequal distances between corner monuments on the same east and west line. On the other hand, the north boundary line of section 15, between discovered monuments is 83.32 chains; the south boundary line of said section is 82.30 chains; while the south boundary line of section 22, lying immediately south and between discovered monuments, is 83.20 chains. By reason of this irregularity, both in courses and distances, the discovery of the mounds and pits which marked the original corners has been made difficult, the difficulty of which has been increased by the fact that the government field notes do not accurately show the distance between the government mounds.

The next survey mentioned in the testimony is the survey made by one Hayes, some of which was in 1886. As to this, Mather testified that Hayes made a survey at different times of portions of the township, and further said:

"I think his survey located in all cases and tallied with the other testimony we found and was in agreement with the corner we accepted. It did not tally with the government field notes always."

The next survey mentioned is the Meyer's survey, made not earlier than 1904. This was a survey of the township made at the request of the township board. Meyers marked the corners with apparently little regard for government mounds, pits, established roads, or ancient fences; but the result was a closer approximation to the government field notes than the Mather survey. According to the testimony of the witness Wilbert at whose house Meyers boarded while running the survey, Meyers said to him after two days of surveying, that he had found the corners nearly in the right places, and that he would make straight lines all through the township, and that, if the people in the township would stay by it, they would have the nicest surveyed township in the county. After the Meyers survey, a vote was taken at a town meeting as to whether they would hold to the old or the new survey. According to the testimony of the witness Smith, who was, at the time of the survey, one of the township supervisors, about three-fourths of

those present favored the new survey, and one-fourth "wanted to stay on what they called the corners." Smith, who at that time owned the east half of section 10, assented to the Meyers survey; and his sons, who now own that land which adjoins appellant's land, accept the Meyers corners as binding.

That the Meyers survey did not uniformly produce such satisfaction is illustrated by the testimony of the witness Kruse, who has lived on the northwest quarter of section 22 in said township since 1882, who testified to seeing the government mound and four pits at the northwest corner in the spring of 1882, also a mound and two pits at the quarter corner on the west section line, and that, in the fall of 1882, he saw a mound and four pits at the southwest corner of section 22. Witness Kruse also testified that they had five acres broken in the southwest corner of the northwest quarter, according to said corners; that, when his young sister died in 1884, she was buried in a grave which is 10 or 12 steps to the east, and probably that many feet to the north, of the southwest corner of the breaking; that the grave is now marked by a mound with lilacs growing around it. According to the Meyers survey, that grave would be in section 21 instead of section 22.

The trial court found that:

"The said proposed and pretended Meyers survey was not made or established along the line of the original government survey of the land in question, and was not established in the manner provided by the rules for the government of United States surveyors in establishing lost or obliterated corners, * * * and * * * that the marks adopted and established by the survey of Meyers, at or near the corners in controversy, were not the original locations fixed by the United States as the locations of said points, lines and corners around and in the vicinity of said land."

The court also found:

"That the line as re-established by the surveyor, E. K. Mather, is upon the line of the original government survey."

The findings of the trial court, including the foregoing, were based upon conflicting evidence. We are of the opinion that not only was there sufficient competent evidence to support them, but that there was no clear preponderance of evidence against them; and therefore the findings will not be disturbed on appeal.

The judgment thereon is supported by Lawson v. Viola

Tp., 50 S. D. 555, 210 N. W. 979; Coulter v. Gudehus, 30 S. D. 616, 139 N. W. 330, and the cases therein cited. Therefore it should not be set aside, unless it be, as appellant contends, that the county has no right to change the boundary line between sections 10 and 11 established by the Meyers survey and acquiesced in, and adopted, by the owners of the lands adjoining.

Before considering the legal aspects of this contention, it should be observed that it is not free from doubt that the road as now traveled west of appellant's fence conforms to the Meyers survey. As traveled, the road north from appellant's northwest corner is about 2 rods east of the road south from that corner. This causes a jog at the northwest corner on the east and west section line. Going south from that corner, the road bears two rods to the east in the first half mile, then there is an abrupt jog of two rods further to the east, from which point the road takes a generally southerly course; but, before reaching the southwest corner, it bends gradually west. Appellant's brother, who helped build the fence along the west side of the northwest quarter 15 or 16 years before the trial, and who built the fence along the west side of the southwest quarter about 10 years before the trial, admits that he built the fence in the southwest quarter to allow room for the road, despite the fact that he found the corner about three rods west of John Smith's corner. That the southwest corner of the section 11 as located by Meyers is west of the present traveled road is also corroborated by the testimony of appellant's surveyor. There is other evidence which would tend to prove that the present highway, where appellant would have it remain, is not along the line of the Meyers survey. On the part of respondents, there is evidence that the jog in the highway at the northwest corner of appellant's land was not there prior to the construction of his west fence, and the road formerly was located east of his west fence, at the northwest corner. Inasmuch as the Meyers survey was made less than 20 years before the trial, and appellant had been the owner of the land not more than 17 years, we have here no case of acquiescence in a disputed boundary for the period of 20 years.

Under the foregoing facts, are the respondents to be prevented from constructing the highway upon the true government section line? Appellant cites numerous authorities in support of

his contention that, where the boundary line between two adjacent tracts of land is uncertain, the owners of the land may agree on what shall be the boundary line, and such agreement is binding. He cites us no authority holding that such an agreement would be binding upon respondents or upon Brule county. Unless so bound, respondents would not be governed by the law so cited.

Section 8519, R. C. 1919, is as follows:

"There is along every section line in this state a public highway located by operation of law, except where some portion of the highway along such section line has been heretofore vacated or relocated by the lawful action of some authorized public officer, board or tribunal."

Section 8520 is as follows:

"Except as provided in section 8518" (which relates to roads constructed by state or federal aid) "the board of county commissioners shall have power to vacate or change the location of any such section line highway within its county, as provided in this Code."

We are cited to no provision in the Code which permits section line highways to be changed by agreement of adjoining landowners. In such changes, the public is an interested third party, whose acquiescence in such an agreement is essential to make it binding upon it. The evidence herein does not disclose any such acquiescence whether by section 8520 or otherwise. In Quinn v. Baage, 138 Iowa, 426, 433, 114 N. W. 205 207, it is said:

"Manifestly the doctrine of acquiescence can have no application to the fixing of a boundary between the abutting owner and the highway, for no one representing the public is authorized to enter into an agreement upon or to acquiesce in any particular location. * * * As an official of the county or township is not authorized to establish the line other than in its true location, it follows that the public cannot be bound by such an agreement, if made, or by acquiescence in a line erroneously treated as correct, no matter for how long a time."

The court having found the true location of the section line between said sections 10 and 11 to be along the line of the Mather survey, and no legal acquiescence on the part of the public in the Meyers survey along said mile of highway being shown, the judgment appealed from was proper.

The judgment and order appealed from are affirmed.

BRUCH, P. J., and POLLEY, SHERWOOD, and CAMP-BELL, JJ., concur.

BROWN, J., disqualified, and not sitting.