McDONALD, Appellant, v. SMITH, Superintendent of Banks, et al, Respondents.

(224 N. W. 190.)

(File No. 6433.   Opinion filed March 16, 1929.)

*E. E. Wagner,* of Mitchell, for Appellant.

*Danforth & Seacat,* of Alexandria, for F. R. Smith.

*M. Harry O'Brien,* of Highmore, for A. B. Douglas and Jennie W. Douglas.

BROWN, J. In this case, tried by the court without a jury, judgment was given for defendants, dismissing the action on the merits; plaintiff appeals from the judgment and an order denying a new trial. The only question argued is the insufficiency of the evidence to justify the judgment, appellant contending that upon the evidence, findings and judgment should have been in his favor.

Smith & Douglas, a partnership composed of George Smith and A. B. Douglas, sold a ranch in Hyde county to F. C. Hartshorn, of Clarion, Iowa. On parts of this land were mortgages to O. L. Branson & Co., bankers of Mitchell, S. D., securing three notes, two for $1,200 each and one for $600, all dated July 12, 1919, due July 1, 1924; on another tract was a mortgage, referred to in the record as the Kyte mortgage, for $800, dated February 16, 1916, due March 1, 1921. In March, 1920, Hartshorn made settlement for the ranch, in the course of which settlement $20,000 was left "in escrow" in a bank in Clarion, as security that the ranch would be cleared of all incumbrances, and title to all its parts made merchantable, and drafts were given in favor of different parties as directed by Smith & Douglas, one of which went to Douglas individually for $7,758.16. He deposited this in Hyde County State Bank and drew a check on the account in favor of O. L. Branson & Co. in payment of the two notes of $1,200 and the $600 note, and received the notes stamped "Paid," together with the mortgages and satisfactions of the mortgages. All of these papers he says he turned over to his wife, the defendant Jennie Douglas. She claimed some interest in them on account of her separate money having been used by her husband in paying the running expenses of the ranch during the last year before it was sold, he

having had sole management of the business of the Smith & Douglas partnership. Douglas paid the Kyte note in April, 1920, to a bank in Sioux Falls which held it, and received the note and mortgage stamped "Paid," which he testified he turned over to attorneys who quieted title to part of the land.

In August, 1921, Jennie Douglas returned the three Branson & Co. notes and mortgages to O. L. Branson & Co. for collection, she having been advised by counsel that she could disregard the satisfactions and foreclose the mortgages. In the meantime George Smith and A. B. Douglas had borrowed $1,000 from O. L. Branson & Co. and given their note therefor, signed by them as individuals. Mrs. Douglas says that in her conversation with Branson it was agreed that he should foreclose the mortgages, and the money was to be held until she could get a settlement with Smith on account of her funds that had been used in paying the expenses of the Smith & Douglas ranch. She says that at that time nothing was said about these notes and mortgages being held by Branson & Co. as security for the $1,000 note of Smith & Douglas, but in a letter to Branson & Co. dated May 22, 1922, signed by her and also by her husband, A. B. Douglas, these notes and mortgages are referred to as being held by Branson & Co. as collateral to this obligation of Smith & Douglas, and it is stated in that letter that after O. L. Branson & Co. are paid and all necessary costs and expenses paid "the balance is to be disposed of according to our agreement."

The three mortgages and the Kyte mortgage were foreclosed by the defendant L. E. Whitcher as attorney for Branson & Co., and at the sale the premises were bid in in the name of J. A. Wright, and later redemption was made by Hartshorn paying $4,936.14. This redemption money was paid from the $20,000 "in escrow." Whitcher testified that he did not get the Kyte mortgage from either Branson or the Douglases, but from C. H. Noel, attorney, and foreclosed it as "part of the stuff necessary to clear the title."

The total amount realized on the foreclosure sales seems to have been $4,833.29. This sum was paid to Whitcher, and he disbursed it as follows:

Attorneys' fees and other expenses of foreclosure......$  805.66

Paid the Branson note of $1,000, with interest ........... 1,166.66
Procured two drafts from Hyde County State Bank, both
     payable to his own order, one ...................... 2,000.00
The other ............................................ 860.97

       Total .......................................$4,833.29

These drafts he gave to Gardner and Churchill, attorneys for Branson & Co., to be held until Jennie Douglas got a settlement with Smith. Before this was accomplished Hyde County State Bank failed, and a claim for the amount was filed with the superintendent of banks by Whitcher. O. L. Branson & Company have likewise become insolvent.

In September, 1923, the firm of Smith & Douglas had become insolvent, and plaintiff was appointed receiver and brings this action for the $4,833.29 realized on the foreclosures, with interest, alleging that the return of the notes and mortgages to Branson & Co. and the foreclosure by them was collusive and fraudulent and for the purpose of defrauding the general creditors of Smith & Douglas out of the amount paid to redeem from the foreclosure sale.

Appellant contends that the manner in which these mortgages came into the possession of Mrs. Douglas after they were marked "Paid" and satisfactions of the mortgages had been executed and delivered to her husband, along with the notes and mortgages, conclusively shows that the subsequent foreclosure of the mortgages was the result of a collusive understanding between the Douglases and Branson to procure for Jennie Douglas the money realized on the foreclosures, and from which Branson should get paid the $1,000 note given by George Smith and A. B. Douglas. He says: "It may have been in the mind of Branson when he entered into this deal with Mrs. Douglas to foreclose the mortgages that he would appropriate enough of the proceeds of the foreclosure sales to pay the thousand dollar note, but he knew the mortgage indebtedness had been paid off and that satisfactions had been executed and delivered to Mr. Douglas, and he must have known that it would be a fraud on the creditors of the firm to foreclose all of these mortgages for an indebtedness that had been paid."

But the notes and mortgages were delivered by Mrs. Douglas to Branson & Co. for collection more than two years before the appointment of the receiver, and it is not shown that Smith & Douglas were then insolvent. The notes and mortgages were paid long before maturity, and the makers could reissue them if they desired. Rev. Code, § 1754; 8 C. J. 590. The testimony is undisputed that A. B. Douglas had complete charge and management of the affairs of Smith & Douglas. If money belonging to Mrs. Douglas was used in paying the running expenses of the firm ranch, the firm had a right to give her these notes and mortgages to secure her for whatever might be due her on a settlement between her and the firm or between her and Smith. A. B. Douglas testified that he turned the notes and mortgages over to her, she claiming some interest in them on account of her money having been used to pay the ranch accounts of Smith & Douglas, and that the firm was indebted to her on that account. A. B. Douglas had the active management of the partnership affairs of Smith & Douglas, and the delivery by him to Mrs. Douglas of the notes and mortgages in question was in effect an equitable assignment of the notes and mortgages to her, and she had a right to foreclose them as security for whatever might have been due her from the firm of Smith & Douglas. No part of the proceeds of the foreclosures came into her possession or under her control, nor did she claim any part thereof except as she might be found entitled to it on the settlement, which never was had. She therefore should not be held liable for any part of such proceeds. Her husband testified that the firm of Smith & Douglas owed her quite a bit of money, and that she claimed some interest in the notes and mortgages and he turned them over to her. Mrs. Douglas also testified that Smith had not paid his part of the running expenses of the ranch and that her money was taken from time to time by her husband and used in the ranch business and was to be turned back to her in some way when the money for the sale of the ranch was paid over at Clarion. The $20,000 which was left in escrow belonged to the firm of Smith & Douglas, and out of it they had a right to pay Branson & Co. the $1,000 note which they individually owed, if both partners consented. 30 Cyc. 501. There is nothing in the record indicating that both did not consent, nor is there any proof that at the time the $1,000 note was paid to Branson & Co., Smith &

Douglas were not solvent. The testimony of Douglas that at the time that note was given their unsecured note "was good anywhere" is undisputed. We cannot say that there is not evidence to sustain the findings of the trial court, or that the preponderance of the evidence is against such findings, and therefore the findings will not be disturbed by this court. Citizens' State Bank v. Christiansen (S. D.), 217 N. W. 203; Kreider v. Yarosh (S. D.), 217 N. W. 640.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., concurs in result.