CHRISTIANSON, Respondent, v. DANEVILLE TOWNSHIP, et al, Appellants.

(246 N. W. 101.)

(File No. 7432.   Opinion filed December 30, 1932.)

*Roy E. Willy,* of Sioux Falls, for Appellants.
*Alan Bogue,* of Parker, for Respondent.

CAMPBELL, P. J.  Plaintiff owns land in the southwest quarter of section 21, township 96, north range 53, west of the Fifth principal meridian in Daneville township, Turner county, adjacent on its westerly side, of course, to the section line running north between sections 20 and 21 in said township from the corner common to sections 20, 21, 28, and 29.  Defendant township board started to cut trees and clear a right of way to lay out and grade a highway on what they claimed to be the section line running north between said sections 20 and 21.  Plaintiff maintained that the operations undertaken by defendants were not in fact upon the section line at all, but were upon a line 56 feet to the eastward thereof, that said operations were wholly upon land owned in fee by plaintiff, and not subject to any easement for highway purposes, and that defendants were therefore trespassers.  Plaintiff instituted this action in the court below to recover damages for the trespass already committed by cutting and blasting trees and to enjoin further trespass.  The issue between the parties was as to the true location of the section line running north between townships 20 and 21, which, in turn rested upon a contention as to the true location of the section corner common to sections 20, 21, 28, and 29.  If that corner was at the point contended for by defendants, then defendants were conducting their operations upon the section line.  If the corner was at the point contended for by plaintiff, then the operations undertaken by defendants were east of the section line right of way, and they were trespassers.  The action was tried to the court without a jury, and the learned trial judge found for the defendants.  In other words, he adopted the contention of the defendants as to the location of the corner in question.  Thereafter, on plaintiff's motion based upon new discovery of additional evidence, a new trial was granted, and at the conclusion of the second trial the learned trial judge found in favor of the plaintiff; that is to say, he adopted the contention of plaintiff as to the location of the disputed corner.  From this second judgment and from a denial of their application for new trial defendants have now appealed.

The original survey whereby this township was subdivided into sections was made in 1866. The sole question in dispute, as we have stated above, is as to the precise point where such survey established the corner common to sections 20, 21, 28, and 29. All parties admit that no visible trace remains of the monument placed by the original surveyor to mark the corner in question. Respondent, conceding the entire obliteration of the original surveyor's monument, contends nevertheless that an iron stake driven into the ground and much referred to in the testimony marks the precise point where the original surveyor's monument formerly stood. Appellants deny this, and maintain that the original monument is not only obliterated but entirely lost. All parties concede that the corners established by the original survey are known and identifiable, either because of present existence of original monuments or satisfactory evidence as to their location, at the following points adjacent to the disputed corner, to wit: The section corner a mile north, the section corner 2 miles east, the section corner a mile south, the quarter section corner a half mile west, and the section corner a mile west. The government field notes show that from the quarter section corner a half mile west to the disputed corner the distance was 40 chains 3½ links, or 2,642.31 feet; that from the disputed corner to the section corner one mile east the distance was 79 chains 92 links, or 5,274.72 feet; and thence to the section corner 2 mile east of the disputed corner the distance was 80 chains 10 links, or 5,286.6 feet. In other words, the disputed corner, according to the field notes, was 2,642.31 feet east of the quarter section corner common to sections 20 and 29, and 10,561.32 feet west of the section corner common to sections 22, 23, 26, and 27, making the total distance for this 2½ mile line according to the original field notes 13,203.63 feet. Appellants' surveyor running this 2½ mile line at the present time from the quarter section corner a half mile west of the disputed corner to the section corner 2 miles east thereof found the total distance to be 13,430.55 feet, being 226.92 feet in excess of the figures shown by the original survey. Allocating this excess of 226.92 feet to the various parts of the 2½ mile line proportionately to the discrepancies indicated therein by the original field notes, the surveyor located the disputed corner 2,687.56 feet east of the quarter corner common to sections 20 and 29, and 10,742.99 feet west of the sec-

tion corner common to sections 22, 23, 26, and 27. This places the corner 56 feet east of the iron stake which respondent claims marks the location of the obliterated monument placed by the original surveyor to mark the corner in question.

Cases involving disputed boundaries or disputed corners have been more or less frequently before this court. Among others may be mentioned Iverson v. Johnson (1931) 59 S. D. 313, 239 N. W. 757; Kreider v. Yarosh (1928) 52 S. D. 380, 217 N. W. 640; Lawson v. Viola Tp. (1926) 50 S. D. 555, 210 N. W. 979; Larson v. Edison Tp. (1918) 41 S. D. 168, 169 N. W. 523; Mason v. Braught (1914) 33 S. D. 559, 146 N. W. 687; Coulter v. Gudehus (1913) 30 S. D. 616, 139 N. W. 330; Hanson v. Tp. of Red Rock (1893) 4 S. D. 358, 57 N. W. 11. It is not difficult to deduce from these cases the applicable legal principles. The boundaries as established by the government survey are unchangeable and must control. The problem is to relocate such boundaries and corners and ascertain where they were in fact placed by the survey. Monuments placed by the original surveyor control courses and distances in the field notes if such monuments are discoverable. In order that a monument may control courses and distances if there is a discrepancy between them, the precise locus of the monument must be established by clear and satisfactory evidence. This may be done by finding the original monument itself or visible remaining evidence thereof. If no visible evidence can be found of the monument as placed by the original surveyor, we have what is commonly referred to as an "obliterated corner," though probably more strictly speaking an "obliterated monument." Even though the monument is obliterated, nevertheless the location thereof may be determinable beyond reasonable doubt by memorials in the field such as witness trees or monuments, bearings from adjacent identified objects still remaining, and the like, or clear and convincing testimony of persons familiar with the location of the monument prior to its obliteration. If the location of the obliterated monument cannot be established by clear and convincing testimony in some such fashion as this, then the obliterated monument becomes a lost monument. In other words, an obliterated monument cannot be permitted to control courses and distances with which it is not in harmony, unless its precise location is established by clear and con-

vincing testimony. To phrase the matter in another form: A court which finds a corner to be at the claimed situs of an obliterated monument, rather than as located pursuant to courses and distances, where there is lack of harmony between the two, necessarily finds contrary to the preponderance of the evidence, unless it can be said upon the whole record that the evidence tending to establish the precise situs of the obliterated monument is so clear and convincing that such situs is thereby so satisfactorily established that it would be almost unreasonable to question it.

In the instant case there are no witness trees or monuments or adjacent bearing objects whereby the site of the obliterated monument can be established. The location of the obliterated monument must rest upon the testimony of old residents, and, to some extent, perhaps, upon the conduct of adjacent landowners in building fences and setting out trees at a time when the now obliterated monument was existent and visible. The precise question in the last analysis is whether or not the evidence tending to show that the iron stake, hereinbefore mentioned, and which will be hereinafter referred to, truly marks the point of the original surveyor's monument now totally obliterated, is clear and convincing to such extent and degree as to justify permitting that point to stand as a monument controlling courses and distances found in the original field notes which would locate the corner elsewhere.

■■ It may here be stated that appellant township has never previously attempted to lay out and establish a road upon the section line running north between sections 20 and 21, and such travel as there has been north and south along this line has made an appreciable jog at this corner. There is a small creek running from southwest to northeast, crossing from section 29 into section 21 almost at the corner point of said sections, and there is a bridge over this creek in the east and west highway, and none in the north and south highway. Such travel as there has been upon the north and south line appears to have accommodated itself accordingly and crossed the creek on the east and west bridge. Looking at the physical features adjacent to this corner in the way of fences and trees, it is entirely apparent that, whether this corner is where respondent claims it is, or where appellants claim it is, some trees and fences are in the highway to the north or south of the corner

in question. If the corner is located where respondent claims, then trees and fences on the east line of the northeast quarter of section 29 and the southeast quarter of section 20 undoubtedly project to some extent into the highway; while, on the other hand, a fence and trees on the west line of the northwest quarter of section 28 would be located 95 feet east of the section line. Per contra, if the section corner is where appellants claim, then the trees and fences of respondent along the west line of his property in the southwest quarter of section 21 project into the highway. In other words, the building of fences and planting of trees in the vicinity of the disputed corner fail to indicate any unanimity of opinion as to the location of the corner. Coming to the testimony of the various witnesses, some eight witnesses, including the respondent, gave testimony tending to show that a certain iron stake driven by respondent fourteen or fifteen years ago in fact marks the location of the monument, now entirely obliterated, established by the original surveyor in 1866. Conversely, some seven witnesses testified in behalf of appellants that they had never observed any monument at the point where the iron stake now is, but that they had observed the original survey monument of the corner in the form of mound and pits at a point some 76 feet east of the iron stake in question on the east bank of the creek crossing the intersection, which monument had subsequently disappeared by the washing away of the east bank of the creek. In other words, these two groups of witnesses purport to fix the location of the obliterated original monument at two different points 76 feet distant from each other, and each group denies ever having observed or known of any original monument at the point claimed as the true situs thereof by the other group. All these witnesses are endeavoring to testify with reference to matters of forty or fifty years ago and are either of quite extreme age at the present time or were very young at the time of their observation. As is to be expected under such circumstances, and as is usual in such cases, the testimony of the various witnesses, even those purporting to testify to the same general state of facts, displays numerous inconsistencies. To undertake to epitomize and analyze the testimony of each witness would prolong this opinion unduly and serve no useful purpose. We have examined the entire record carefully, and we are compelled to the conclusion that the location of the obliterated monument is not established by

clear and convincing evidence in this case, either at the point claimed by respondent's witnesses or the point claimed by appellants' witnesses. A careful study of the testimony convinces us that, as a matter of fact, the corner in question is, and for many, many years has been, a disputed corner, and that the monument placed by the original survey is not only obliterated but lost. Under those circumstances, the corner as located by present survey from known monuments and proportionate measurement according to the courses and distances of the original survey should prevail, and we think the finding of the trial court establishing the corner at the point claimed by respondent and his witnesses as the situs of the obliterated original monument is contrary to the preponderance of all the evidence.

The judgment and order appealed from are therefore reversed.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

WARREN, J., absent and not participating.