[No. 1140.   Decided March 6, 1894.]

THE CITY OF VANCOUVER, *Respondent*, v. A. E. WINT-
LER *et al.*, *Appellants.*

MUNICIPAL CORPORATIONS — PASSAGE OF ORDINANCES — STREET IM-
PROVEMENTS — ACTION TO ENFORCE ASSESSMENTS — COUNTER-
CLAIM — ILLEGAL ASSESSMENT.

Sec. 635, Gen. Stat., governing the passage of laws by the council in cities of the third class, applies to all ordinances of every kind and for every purpose.

The passage of an ordinance on the day it was reported to the city council by the city attorney, to whom it had been referred, does not invalidate the ordinance, under the provisions of § 635, Gen. Stat., when such ordinance is merely a substitute for one introduced more than five days prior to its passage, and the substitute falls clearly within the limits of the subject matter of the original proposition.

In an action by a city to foreclose a lien for a street assessment, the defendant cannot set up a counterclaim for the value of a strip of land which it was alleged had been taken possession of by the city and improved for street purposes.

When the boundaries of a city have been extended it has power to improve a highway falling within its limits which had been opened as a county road.

Under the statute conferring power upon cities of the third class to make street improvements and assess abutting property, and an ordinance of the city of Vancouver passed pursuant thereto providing that when the city council shall have contracted for the improvement of any street "the cost and expense of such improvement shall be assessed upon the lots and land fronting thereon," property which has been rendered liable for an improvement ordered on a portion of a street cannot be subjected to an additional liability for a continuation of the improvement on another part of the street, made under another contract, although the property thus sought to be subjected has received benefits under the second contract.

Where an assessment against property for street improvement is illegal for the reason that it seeks to charge the property with the cost of improvements for which it is not liable, there can be no recovery, in an action to foreclose such assessment, of the amount that is properly chargeable against the property.

*Appeal from Superior Court, Clarke County.*

*Bronaugh, McArthur, Fenton & Bronaugh, E. C. Bronaugh,* and *N. H. Bloomfield,* for appellants.

*E. E. Coovert,* for respondent.

The opinion of the court was delivered by

STILES, J.—The respondent, a city of the third class, seeks in this action to foreclose certain liens for street assessments against parcels of land abutting on the street and owned in severalty by the appellants. There were originally three separate actions, but under stipulation they came up as one case.

1. The first point made by appellants is, that the general ordinance governing street assessments was void because not passed in the manner required by the statute. The law governing the passage of ordinances is contained in Gen. Stat., § 635, the first clause of which is:

"No ordinance, and no resolution granting any franchise for any purpose, shall be passed by the city council on the

day of its introduction, nor within five days thereafter, nor at any other than a regular meeting, nor without being first submitted to the city attorney."

The respondent has deemed it important to claim, and argue at length, that the provision applies only to ordinances and resolutions granting franchises; but we think the position is untenable. It is the only provision in the act, of which it was a part, governing the matter of the passage of laws by the council, and the last clause of the section, which relates to the number of votes required to pass any ordinance, resolution or order, clearly shows an intention to make a general application of the whole section to all ordinances of every kind and for every purpose.

But the complaint of the appellants is that, although more than five days elapsed between the introduction of ordinance 242 and its passage, the original ordinance was not passed, but a substitute reported by the city attorney. It is a well-known practice of legislative bodies to proceed in this manner, and so long as the substitute is clearly within the limits of the subject matter of the original proposition we see no reason why municipal councils should not proceed in the same way. It is a mere method of amendment, and if the changes made are such as might have been brought about by ordinary amendments the statute is not infringed. This was the case with the ordinance in question, and it was therefore properly passed.

2. The appellants claimed, by way of counterclaim, that the respondent had gone beyond the legal limits of the street (conceding that there was a street at all), and had taken possession of and improved about ten feet in width of their land; and they sought to recover the value of this strip in this action. The court struck out the counterclaim, and error is assigned thereon. We concur with the lower court in its action on this matter. There was no law in force by which municipal corporations could acquire land

for streets by any other method than bargain and sale. *Tacoma v. State*, 4 Wash. 64 (29 Pac. 847). It could not do so by committing a trespass and permitting itself to be sued for the value of the land, any more than could a private individual. *Green v. Tacoma*, 51 Fed. 622.

If the strip of land belonged to the appellants it belongs to them still, and they can recover it, with damages for the trespass, in a proper action.

3. We think there was sufficient evidence before the court to warrant its finding that a highway sixty feet wide had been opened as a county road, and that the city was authorized to improve it, when the boundaries were extended. *Town of Sumner v. Peebles*, 5 Wash. 471 (32 Pac. 221).

4. The assessment sought to be foreclosed was one for the improvement of Main street, from Eighth street to the V. K. & Y. R. R. track, a distance of about twenty blocks, and consisted of grading and sidewalking. The council, on March 21, 1892, adopted a resolution ordering the improvement of the street from Fifteenth street northward to the railroad track. April 25th a contract was entered into with Hayden & Conklin for the grading, and with D. B. Wood for the sidewalk, and the work went on to completion in due time. This part of the improvement fronts upon appellants' land, and the contract price of the grading was $8\frac{1}{2}$ cents per cubic yard for cut and fill, making a total of $1,249.56. June 23d the council ordered a similar improvement to be made in that part of Main street between Eighth and Fifteenth streets, and on July 16th a contract was made between the city and one White for this new work, at $14\frac{1}{2}$ cents per cubic yard for cuts, and 14 cents for fill. The contract of Hayden & Conklin required them to bring the roadway of their portion of the street to the established grade, and the specifications provided that they should deposit earth for fills in layers of not exceed-

ing one foot, and fill up shrinkage free of cost. Their work was finished and accepted before the work on White's contract was commenced. White's part of the street seems to have required much more excavation than fill, so that there was an excess of 7,489 yards of gravel to be disposed of. The eighteenth specification under his contract read:

"The contractor will deposit the surplus excavation at such places and in such manner as the engineer may direct, within 4,000 feet of the point of excavation, and will receive therefor the same price per cubic yard as for street embankments."

Without any order from the council therefor, the chairman of the street committee and the engineer directed White to spread the surplus gravel from his excavations in Main street, as well as 2,536 cubic yards taken from side streets, where approaches to Main street were made, over the surface of the street covered by Hayden & Conklin's contract; thus raising the surface of the street from twelve to eighteen inches. By this course two things were accomplished, viz., a better surface for the street was made, and a convenient way of disposing of the surplus gravel was provided. No assessment was levied for the improvement under the Hayden & Conklin contract; but after White had finished his work one assessment was made for the whole improvement from Eighth street to the railroad, the cost of the White graveling, some $1,400, being added to the $1,249.56 paid to Hayden & Conklin for their grading between Fifteenth street and the railroad.

Appellants complain of this on the ground that they should not be charged for any work but that which was ordered done under the Hayden & Conklin contract; that under neither order of the council was the work of graveling their part of the street contemplated; and that the city's officers had no authority to direct White to do any work, graveling or otherwise, north of Fifteenth street.

The city justifies its action by claiming that the improvement was a continuous one, running from Eighth street, and that it had a right after all the work was done to determine that the benefit from the heavy excavation under the White contract was chargeable to the property north as well as south of Fifteenth street, although the orders for the improvements and the contracts therefor were distinct. It is also argued in its behalf that, now that the graveling has been done, and a confessedly better street made, property owners ought not to be permitted to shirk a just liability for payment of the cost.

The law permitting cities of the third class to make street improvements and assess abutting property therefor is very summary. Without petition and without opportunity for remonstrance, the vote of four members of the council is sufficient to order the most elaborate improvement, and tax the property owner therefor, no matter how unreasonable in point of fact the work may be. It is not to be wondered at, therefore, that municipal corporations exercising such powers are held to a somewhat strict adherence to the letter of the laws they are permitted both to make and to execute. The statute is a mere skeleton conferring the power, with meager details, and leaving it to the corporate authorities, by ordinance, to make rules and regulations for ordering improvements, entering into contracts and levying assessments. Whether, under the general charter of cities of the third class, two independent improvements of the kind here involved could be joined together in one assessment it is not now necessary to decide; but it is clear that under the law governing the respondent city's action, ordinance 242, no such thing can be done. Section 1 reads: "When the city council shall have ordered or contracted for the improvement or repairing of any street . . . the cost and expense of such improvement shall be assessed upon the lots and lands

fronting *thereon*," meaning "fronting the improvement," as it is in terms expressed in § 4. The remainder of the ordinance provides the machinery by which the cost shall be assessed, through the agency of a board of appraisers, consisting of the council committee on streets and the city engineer and assessor. To the council is reserved the power to hear objections to the assessment, and to amend and revise it, "so as to render the same fair and equitable," before it is placed in the hands of the treasurer for collection.

This ordinance, fairly interpreted, requires that when an improvement is ordered by vote of the council, the property fronting on the street within the limits of the proposed improvement, and none other, be assessed for the cost. It is also implied (and therein it merely accords with the general rule of law), that no assessment shall be made upon property to pay for alleged improvements where the council did not, in the manner required by the statute and by ordinance 242, acquire jurisdiction of the matter by duly ordering the specific improvement to be made for which an assessment is sought to be levied. But, in the case before us, only one order was ever made by the council for the improvement of Main street from Fifteenth street north to the railroad, and that was for grading it to a grade established by a former ordinance. A contract was made with Hayden & Conklin for this work, which they performed to such an extent that it was accepted and paid for, and for the expense thus incurred the city had a right to levy an assessment.

Excuse is sought for adding the cost of putting gravel on the street by the allegation that Hayden & Conklin's fills had settled so that in places the surface was below grade; but if the fact be so, the answer is that their contract provided that they should make good any such shrinkage at their own expense, and if the city has not

held them to their agreement it cannot expect to recover from property owners for what it ought to assess to other property under another order and another contract. If it was intended to gravel the northern end of the street with material to be derived from White's excavations, it should have been so declared in the resolution of intention. But what was ordered was that Main street should be graded and sidewalked between Eighth and Fifteenth streets, and under ordinance 242, when the assessment came to be made, only property fronting on that improvement could be charged with the cost thereof. Owners of other property would have no reason to expect that they would be assessed and would naturally pay no attention to the matter, although surplus earth or gravel might be deposited in front of their property for the convenience of the contractors.

It was a part of the contract with White that he should receive in payment of his work the assessment upon the property made liable by law to pay its proportion of the cost and expense of making the improvement contracted for by him (in addition to what the city should pay for street intersections), and that he would make no claim and wage no suit against the city for anything further; he, therefore, would have had a right to have the sum due him assessed upon and collected from the property which he improved, viz., that between Eighth and Fifteenth streets. This merely illustrates the situation, for White seems to have been paid out of the city treasury; but it serves to show that when the contract was made the city authorities had no expectation that his compensation would be derived from any property north of Fifteenth street.

There has been such a confusion of property and charges in the attempted assessment that it can only be said that it is not a legal assessment at all, and we must hold the attempt to charge the appellant's property void. In a pro-

25—8 WASH.

ceeding to foreclose an assessment by suit, large latitude
will be allowed if jurisdiction has once attached; but the
right of the city to recover depends finally upon an assess-
ment of the property legally chargeable for the improve-
ment ordered, and that has not been produced.   The courts
cannot make an assessment where the authorities of the
city have, in the most material matters, failed to make one.
For this reason even the amount which appellants ought
justly to pay cannot be recovered in this action.

Judgment reversed, and cause remanded for dismissal.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT and SCOTT, JJ., dissent.

### ON PETITION FOR RE-HEARING.

STILES, J.—The respondent asks a modification in the
disposition of this case, so that it may be allowed to re-
cover the amounts properly chargeable against lots or
tracts as they may be found located between Eighth and
Fifteenth streets, and between Fifteenth street and the
railroad.   The amendment to § 124 of the act of 1890
(Laws 1893, p. 159), is appealed to for this relief, but al-
though the last clause of the section as amended is very
liberal in permitting a recovery, notwithstanding irregu-
larities and defects in assessment proceedings, it has no
application to cases where there has been no assessment at
all, as is the fact here, for what purported to be an assess-
ment was not, in fact, such, but was an arbitrary attempt,
notwithstanding the clear provisions of the ordinance, to
confuse two independent matters, having no connection
with each other.   It would be grossly inequitable and un-
just to compel property owners to submit to the cost and
expense of defending suits merely to reduce assessments
to the proper amount when the city authorities have not
laid even the foundation of a levy, which is necessary to
the jurisdiction of both the corporation and the court.

Ch. 95 of the Laws of 1893 seems to be intended to point out a way by which respondent can secure its just rights against the property of appellants.

DUNBAR, C. J., and ANDERS, J., concur.