[No. 12536.  Department Two.  December 31, 1914.]

# T. M. TENNENT, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MUNICIPAL CORPORATIONS—ORDINANCES — REQUISITES — PASSAGE—VALIDITY.  The charter requirement of a city that an ordinance shall not be passed at the meeting at which it is introduced cannot be evaded by the subterfuge of first introducing what purported to be an ordinance, but which was without body or parts, and could only have been intended as the title to an ordinance subsequently to be written, and at the next meeting of the council introducing a completed ordinance with substantially the same title but containing various other matters not embraced within the title first introduced.

SAME—CONTRACTS—AUTHORITY—INVALID ORDINANCE.  A contract deriving its sanction wholly from an ordinance of a city is invalid, where the charter prescribed that no ordinance should be passed at the same meeting at which it was introduced, and this provision was violated by the council.

SAME—BONDS—SUBMISSION TO VOTE—INVALID ORDINANCE—RATIFICATION.  Where a city charter makes an ordinance an essential to the institution of proceedings to submit a bond issue to a vote of the people, and the ordinance submitting the matter is invalid, the bonds are not rendered valid by the fact that the incurrence of the indebtedness was approved by the electors of the city at the election subsequently held under such ordinance.

SAME — ORDINANCE — PASSAGE — VALIDITY — DETERMINATION BY COURTS.  The courts are not deprived of their right to inquire into the manner in which city ordinances are introduced and passed, upon the principle that the enrolled bill is in itself conclusive evidence of regularity in its passage, as in the case of legislative acts; since the city is not one of the three coordinate branches of the government, but is only exercising delegated authority in a prescribed manner, and an authority must be exercised to see that the city performs its functions in such manner.

SAME—CONTROL OVER STREETS—STATUTORY PROVISIONS.  An agreement with, or consent of, the Port of Seattle is not essential to an issue of bridge bonds by the city of Seattle for various bridges, on the theory that the Port of Seattle has some interest therein, under a provision of the city charter providing that when the electors shall have adopted a comprehensive plan or scheme of harbor or port improvement, the control of streets therein shall be vested in the Port

[1]Reported in 145 Pac. 83.

of Seattle within thirty days after it is prepared to proceed there-with; since the provision is not self-executing, and the Port's inter-est will not accrue until the comprehensive plan has been adopted.

SAME — BRIDGE BONDS — CONDITIONS PRECEDENT — ACQUISITION OF LANDS. The obtaining of property on which to place a city bridge is not a condition precedent to the issuance of bonds to procure funds for the construction of the bridge, and the validity of the bonds is not affected thereby, where it is not shown that there is any im-pediment preventing the city from ultimately obtaining the prop-erty.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 2, 1914, dismissing an action to restrain the issue of municipal bonds, after a trial to the court. Reversed.

*Preston & Thorgrimson*, for appellant.

*James E. Bradford, Howard A. Hanson*, and *Geo. A. Meagher*, for respondent.

FULLERTON, J.—The appellant, a citizen and taxpayer of the city of Seattle, brought this action against the city to restrain it from issuing and delivering certain negotiable bonds, purporting to have been authorized by ordinance of the city of Seattle, and by the vote of the electors of the city at a special election at which the question of the issu-ance of such bonds was submitted. The court below, after a trial of the issues made by the pleadings, adjudged the action unfounded, and ordered its dismissal. This appeal followed.

The principal question suggested by the appellant is the sufficiency of the proceedings of the city council leading up to the enactment of the ordinance. It is contended that such proceedings were so far irregular, and so far a departure from the requirements of the city charter relative to the enactment of ordinances of this character, as to render the ordinance void. To make clear the precise contention, the facts must be briefly recited. On May 8, 1914, at an ad-journed session of the city council, a member thereof intro-

duced an instrument entitled, "Ordinance No.————,"
reading as follows:

"An Ordinance submitting to the qualified voters of the
City of Seattle at a special election to be held in said city on
the————day of————, 1914, the proposition of
the issuance and sale by said city of its general bonds in the
sum of One Million One Hundred Twenty-five Thousand
($1,125,000) Dollars, for the purpose of providing money
for the construction of a system of bridges for the City of
Seattle across the Government Canal, Lake Union and Sal-
mon Bay Waterway."

The council journal shows that the instrument was then
"read first time and referred to Finance and Streets and
Sewers committee." On May 18, 1914, at a regular meet-
ing of the city council, the committees before named reported
back the instrument to the council with the recommenda-
tion "that the same be amended to conform to Exhibit 'A'
attached hereto and when so amended the same do pass."
The report of the committees was adopted, and the exhibit
referred to the judiciary committee for engrossment. Sub-
sequently, at the same meeting, the judiciary committee re-
ported the same as properly engrossed, whereupon it was
"read second and third times and passed," as ordinance No.
33,133.

The exhibit was in form a completed ordinance. It con-
tained a title which in outline substantially conformed to the
instrument originally introduced. The date of the proposed
election, however, was specified in the title; the amount of
the bonds proposed to be issued was $1,328,000 instead of
$1,125,000 as first named, and seemingly a body of water
other than any of those mentioned in the original instrument
was named across which the proposed system of bridges
should be constructed. Other new matters added were some
nine "whereases," containing various recitals, immediately
following the title; these in turn were followed by an enacting
clause, beneath which were some nine separate sections con-
taining the provisions of the ordinance proper. These pro-

visions we need not recite in detail. Generally, they provide the terms and conditions upon which the bonds proposed to be issued may be sold, the interest rate thereon, the time in which they shall run, and the means by which the accruing interest and the principal when due shall be paid. They also provide the time and manner in which the proposition of incurring the indebtedness shall be submitted to the electors. Four separate and distinct propositions were provided for submission for the construction of four separate bridges at as many designated places; each proposition specifying the amount of bonds to be issued for the construction of the particular bridge; all to be so arranged on the ballot as to enable an elector to vote for or against each one separately.

The propositions were submitted to the electors in accordance with the terms of the ordinance. Two of them only, however, met with the approval of the electors; these authorized the issuance of bonds in the sum of $829,000. It is this issuance that the appellant seeks to enjoin.

The provisions of the city charter thought to be violated in the passage of the ordinance are found in sections 10, 11, 26 and 27, of art. 4, of that instrument. These in substance provide, that every legislative act of the city shall be by ordinance; that no ordinance other than an ordinance providing for appropriations for salaries or current expenses, shall be passed on its final reading at the meeting on which it is introduced; that, when loans shall be created exceeding one and one-half per centum of the taxable property of the city, and bonds therefor issued, the proposition for creating the indebtedness shall be first submitted to the electors of the city, and the mode and manner of submitting such proposition to the electors shall be prescribed by ordinance; and that no debt or obligation of any kind against the city shall be created by the city council except by ordinance specifying the amount and object of such expenditure.

It is our opinion that the appellant's contention to the effect that the charter provisions of the city were violated

in the enactment of the ordinance is well founded. The introduction of the instrument at the adjourned meeting of May 18, 1914, was in no sense the introduction of an ordinance. The instrument contained none of the elements of an ordinance; it was without body or parts; and was a mere sham and subterfuge. If it had been enacted in the form in which it was introduced, and afterwards submitted to the vote of the electors in that form, no one would contend it sufficient to authorize an issuance of bonds for any purpose; and this being so, its introduction into the city council cannot be said to be the introduction of an ordinance therein. Doubtless the instrument was intended as the title to an ordinance, subsequently to be written under it. It did not prove even sufficient for that purpose, but if it had, it would not have been the introduction of an ordinance, as clearly the introduction of a title to an ordinance is not the introduction of an ordinance.

We do not, of course, intend to deny the power of the council to amend an ordinance properly introduced, and pass it at the meeting at which it is amended. This can be done where the amendment is in matter of form, or in the addition of new matter which does not alter the effect and scope of the ordinance; but it does not permit the substitution of an entirely new and different ordinance for the one originally introduced, nor does it sanction the gross attempt at subterfuge practiced in this instance. The requirement that an ordinance shall not be passed at the meeting at which it is introduced has a purpose. It is intended to prevent hasty and ill-advised legislation. The record before us bears evidence of the salutory design of the rule. It shows that this ordinance could have with advantage received more careful consideration. Two of the propositions submitted met with the entire disapproval of the electors, and the others succeeded with no very considerable margin.

It is clear to our minds, therefore, that the city council, in the passage of the ordinance in question, did not comply with

the requirements of the city charter. That this is fatal to an ordinance deriving its sanction wholly from the act of the city council was held by this court in *Savage v. Tacoma*, 61 Wash. 1, 112 Pac. 78. There the city had passed an ordinance providing for an extension of its water system, and had entered into a contract for the performance of the work. Subsequently, but before the work had been entered upon, the city repudiated the contract and repealed the ordinance. An action was brought for the breach of the contract, and the city pleaded in defense the invalidity of the ordinance, founding its claim upon the fact that the ordinance had been introduced and passed at the same meeting of the city council, contrary to the provisions of the city charter. The lower court sustained the plea, and this court affirmed its judgment. In the course of the opinion, the court said:

"We believe it to be the law that, where a municipal charter prescribes a definite method for the enactment of ordi nances, such requirements are mandatory, and no authority is vested in the law-making body of the municipality to pass ordinances except in the manner required by the charter. Dillon, Municipal Corporations (4th ed.), § 309; Abbott, Municipal Corporations, § 525; Smith, Modern Law of Municipal Corporations, § 506; *State, Gleason Pros. v. Bergen*, 33 N. J. L. 72; *Avis v. Vineland*, 55 N. J. L. 285, 26 Atl. 149; *Danville v. Shelton*, 76 Va. 325. The ordinance being void, no authority was thereby vested in the commissioner of public works to enter into the contract, and the contract, or its breach, could not be made the basis of an action at law; . . ."

The foregoing case concludes the question against the validity of the ordinance, unless the question is taken without the rule by the fact that the incurrence of the indebtedness was subsequently approved by the electors of the city. But we cannot think this alone sufficient. An invalid ordinance is no more effective to authorize a bond issue than is the want of an ordinance, and, as we have shown, the city charter expressly provides (art. 4, § 27) that no debt or obligation

of any kind against the city shall be created by the city council except by ordinance specifying the amount and object of such expenditure, and, where the amount exceeds one and one-half per centum of the taxable property of the city and bonds therefor are to be issued, not until the proposition for creating such indebtedness shall have been submitted to the electors of the city by an ordinance providing the mode and manner of such submission (Id., § 26). Since, therefore, the fundamental law makes an ordinance an essential to the institution of the proceedings, it is difficult to see how a valid issuance of bonds may be made without a compliance with such essential. But it is said that this court has announced a different rule in the case of *State ex rel. Atkinson v. Ross*, 46 Wash. 28, 89 Pac. 158. We cannot so read the case. True the court did say in the course of the opinion that the passing of the ordinance was not the most essential step in a proceeding leading up to an issuance of bonds; that the most essential step was the notice to the taxpayers, and the exercise of their right to vote upon the proposition. But an examination of the case will show that the court did not find that the vote was had and the bonds then in question issued upon an ordinance introduced and passed at the same meeting of the council. This is made clear by the concluding sentence of the opinion, wherein it is stated that "no provision of the law was violated," and by the following extract taken from an earlier part thereof:

"The findings of fact show that there were many meetings of the city council during the month of January, 1906, and while it is true that those meetings were pursuant to adjournment, it does not necessarily follow that they were adjourned or continued meetings in the sense that they all constituted one and the same meeting. It is conceded that the council had a right to call special meetings, and it is settled by authority that any business may be transacted at a special meeting, and that the purpose of the meeting need not be stated unless the law requires it, and it is conceded that the charter of Seattle does not require it. What the council did,

in effect, when it adjourned on motion, was to call a special meeting. This intention was simply expressed by the motion for adjournment to a certain time. It is true that ordinarily this might technically constitute an adjourned meeting, but the facts show that such was not the intention in this case, for the council met regularly every Monday evening, and, instead of commencing the business where it left off at the previous meeting, the manner of transacting the business showed that it was intended to be treated as a regular meeting, the business being transacted as follows: 1. Roll call. 2. Approval of the journal. 3. Special order. 4. Communications and reports from city officers. 5. Petitions and remonstrances. 6. Reports of standing committees. 7. Introduction of resolutions. 8. Introduction of bills by committees. 9. Introduction of bills by members. 10. First reading of bills. 11. Second reading of bills. 12. Third reading of bills. 13. Unfinished business. 14. Other business. The court also found that it was generally known throughout the city of Seattle and by its citizens that the city council of the city of Seattle regularly held its meetings on Monday evening of each week, and that the council only adjourned *sine die* on the last meeting of each two years' term. So that the council evidently did not give much consideration to the parliamentary language used in the motion to adjourn, and, if bound to the technical meaning of such language, could be held to have had only one regular meeting in two years, a construction which, of course, the council did not place upon its proceedings, and which a court would not be authorized to place upon them."

The respondent further claims that it is beyond the power of the court to inquire into the manner in which the ordinance was introduced and passed, but that the enrolled bill is in itself conclusive evidence of the fact that it has been regularly enacted by the city council. This is the rule this court has applied to acts of the legislature, and is undoubtedly the rule usually applied by courts to such enactments. But we cannot think it applicable to ordinances or laws of inferior bodies. The legislature is, in virtue of the constitution, "the judge of the election, returns, and qualifications of its own members," and has power to prescribe "the rules

of its own proceedings." It has, therefore, the sole right to judge of the regularity and sufficiency of its own proceedings. Moreover, it is one of the three co-ordinate branches of the government, and, aside from the public inconvenience and positive harm that would result from another rule, it is but showing that respect and proper deference which each department owes to each of the others, to presume that a law regular upon its face, has been enacted with due reference to the requirements of the constitution regulating the manner of its passage. But the city council stands on another plane. It exercises a delegated authority, and can legislate only upon certain subjects and in a prescribed manner. The rules governing its proceedings are prescribed by another body, and it is proper that an authority be exercised to see that it performs its functions in the prescribed manner. The fact that the city of Seattle is a city of the first class and may frame its own charter, does not affect the principle. A charter so framed must be "consistent with and subject to the constitution and laws of this state," and no independent or extraordinary exemption can be claimed because it has this privilege. Furthermore, this court has, from the earliest time, exercised the right of inquiry into the regularity of the passage of city ordinances. We did so inquire in *Vancouver v. Wintler*, 8 Wash. 378, 36 Pac. 278, 685; *Raborn v. Mish*, 12 Wash. 167, 40 Pac. 731; *State ex rel. Atkinson v. Ross, supra; State ex rel. Northern Pac. R. Co. v. Hughes*, 53 Wash. 651, 102 Pac. 758; and in *Savage v. Tacoma, supra*. And in the last cited case, as we have heretofore shown, we held an ordinance invalid for the precise reason urged against the validity of the ordinance before us.

The foregoing considerations require a reversal of the judgment entered by the court below, and we could properly end the discussion here. But the appellant has suggested other questions going to the power of the city to issue bonds for this particular purpose, and it may simplify any further

proceedings the city may desire to take if we notice them at this time.

The city charter, in art. 4, § 18, subd. 7, provides:

"That whenever the city of Seattle or the Port of Seattle shall have presented to the qualified electors of either municipality for adoption or rejection, and there shall have been adopted by vote of the electors voting thereon a comprehensive plan or scheme of harbor or port improvement, that the control of such streets and the title to any lands belonging to the city which shall fall within the limits of such proposed improvement shall pass to or be vested in the Port of Seattle within thirty (30) days after said Port of Seattle is prepared to proceed with the improvement so authorized and shall have so certified to the city council."

It is contended by the appellant that under this provision of the charter, the Port of Seattle has some right in, or authority over, the waterway across which the bridges intended to be constructed out of the funds derived from the bond issue in question would extend, and that the city could not properly proceed with the construction of such bridges, without an agreement with or consent from the Port of Seattle. But we agree with the city that this provision of the charter is not self-executing; that the Port of Seattle's interest will only accrue when the "comprehensive plan or scheme" therein mentioned has been adopted, and that until then the city's power over its streets is absolute.

It seems, also, that the city has not acquired, up to the present time, from the individual owners, all of the land necessary to be used in the construction of one of the contemplated bridges, and it is thought that bonds cannot properly be issued for the construction of the particular bridge until such land is obtained by the city. But since it is not shown that there is any impediment in the way of the city which will prevent it from ultimately obtaining the property, we cannot think the obtaining of the property anything more than a mere detail of the general scheme which will be accomplished in due season. The obtaining of real property on

which to place a bridge is not made by the city charter a condition precedent to issuing bonds to procure funds for the construction of the bridge, and we are clearly of the opinion that the validity of bonds so issued cannot be affected by the fact that the necessary property has not been acquired in advance.

For the reason first suggested, the judgment of the trial court is reversed, and the cause remanded with instructions to enter a judgment in accordance with the prayer of the complaint.

CROW, C. J., ELLIS, MOUNT, and MAIN, JJ., concur.